In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2795

RICARDO YONZON CALMA,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A026 702 335

ARGUED JUNE 14, 2011—DECIDED DECEMBER 5, 2011[*]

No. 10-3973

OLEH KHOMYSHYN,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney
General of the United States,

*Respondent.*

---

[*] This opinion is released in typescript; a printed
version will follow.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A088 187 224

SUBMITTED JUNE 14, 2011** —DECIDED DECEMBER 5, 2011***

Before POSNER, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* The petitioners in these consolidated cases, Ricardo Calma and Oleh Khomyshyn, have a great deal in common. Both have been in the United States for many years without permission, and each would like to adjust his status to that of lawful permanent resident through relatives who are legitimately in the United States. When the time came for an immigration judge to issue a decision, each was found ineligible for permanent residence because of the lack of an approved family-relative petition, Form I-130. Confronted with that obstacle, they asked the IJs to continue the removal proceedings, but the IJs denied those requests and ordered removal. We have consolidated their petitions for review. Although we are satisfied that we have jurisdiction over those petitions, we find no abuse of discretion in the judges' rulings and thus deny both petitions.

---

** This court granted Khomyshyn's unopposed motion to waive oral argument. The case is therefore submitted on the briefs.

*** This opinion is released in typescript; a printed version will follow.

# I

## A

Calma is a citizen of the Philippines who came to the United States as a temporary worker in 1982. In 1986 he married Pamela Fuoss, a U.S. citizen, and she filed an I-130 petition on his behalf. But during her interview in support of the application and later in an affidavit, Fuoss admitted that she married Calma only so that he could remain in the United States. She withdrew her petition, prompting the legacy Immigration and Naturalization Services to place Calma in deportation proceedings before an IJ. After Calma failed to show up, the INS administratively closed the case in September 1987.

Calma reemerged 18 years later, in April 2005, when his son Roderick, a U.S. citizen, filed a second I-130 petition on his behalf. The Department of Homeland Security approved Roderick's petition in July of that year, and in September Calma moved to restore his earlier deportation hearing (by this time called a removal proceeding) to the calendar. Calma indicated that once the proceeding was active again, he would apply for permanent residence based on his son's approved I-130 petition.

Calma's petition to restore the case was successful, though as we shall see, a Pyrrhic victory. IJ Zerbe held a deportation hearing, at which the judge found that Calma was deportable for overstaying his visa, as charged in the 1987 administrative-closure order. Calma informed the IJ that he was working to obtain an adjustment of status through his son. In response, the IJ continued the hearing for a year to give Calma time to apply for his adjustment of status and to give the government an opportunity to perform necessary background checks. At the next hearing, the government informed Calma that it intended to revoke his son's I-130 petition based on the fraudulent marriage in 1986. The IJ continued the matter a second time to await the resolution of the revocation proceedings.

The month before Calma's next hearing, DHS revoked Roderick's I-130 petition after concluding that Calma married Fuoss for immigration benefits. The agency determined that the rebuttal evidence that Calma submitted, including affidavits from Calma, his current wife, and the couple who arranged the sham marriage, failed to refute the 1987 affidavit filed by Fuoss admitting the fraud. DHS concluded that the 1986 marriage "was not valid for immigration purposes," and that Calma's fraud was a "good and sufficient" reason to deny his son's I-130 petition. With the I-130 petition revoked, Calma no longer had a basis for seeking permanent residence in the United States. At that point, he asked for a continuance so that he could appeal the decision to revoke to the Board. The IJ accommodated this request with a postponement until October 24, 2008.

Unfortunately, when Calma returned on that date, the Board still had not resolved his appeal from the revocation of the I-130 petition. Calma asked for yet another continuance, but this time the IJ's patience was at an end. Commenting that he did not believe that any further delay was warranted, he denied this last postponement and ordered Calma removed.

The Board dismissed Calma's appeal from the order denying the continuance in July 2010. It found that the pending I-130 appeal was insufficient cause for granting the continuance. Moreover, the Board continued, Calma was unable to show prejudice to his application for permanent residence because he presented no evidence that his appeal from the revocation of the I-130 petition had been successful. (This was putting it mildly; in fact, five months earlier the Board had dismissed Calma's appeal of the revoked visa petition, citing Calma's fraudulent marriage. Calma did not petition for review of that decision.) The petition for review now before us in No. 10-2795 is from this decision of the Board. This was a final decision that discussed only the continuance question; its practical effect was to leave undisturbed the IJ's decision that Calma was removable as charged.

B

Khomyshyn's case is somewhat less complicated. He is a citizen of Ukraine who came to the United States on a tourist visa in 2000. He appeared at his first hearing before an immigration judge in March 2009 and asked IJ Zerbe to continue his case so that his wife, who was herself a permanent U.S. resident at the time, could file an I-130 petition on his behalf. Khomyshyn explained that they were waiting to submit the petition until his wife became a naturalized citizen, a status she would have been eligible to begin seeking five months later. (Oddly, the record is silent about her later actions. More than two years have passed since the IJ's decision, but Khomyshyn has not revealed whether his wife has since naturalized. He concedes that at the time of briefing the immediate-relative petition had not been submitted.) He urged that as the spouse of a citizen he would be immediately eligible for adjustment of status, but as the spouse of a permanent resident he would be subject to DHS's "priority-date" system and would thus have to wait several years before becoming eligible for this relief.

The IJ denied the continuance request and ordered Khomyshyn removed. The IJ noted that Khomyshyn's wife had not yet filed an immediate-relative petition on his behalf and concluded that even if she had, a continuance would still be inappropriate because, as a permanent resident, it would take more than four years for her to confer a benefit on Khomyshyn. Although the IJ recognized that the wait would be reduced if Khomyshyn's wife became a citizen, he thought it "inappropriate to assume that she would qualify for . . . naturalization." In general terms, the IJ explained that he considered it improper to continue a case "so that the alien can at some future unknown date accrue or develop an equity which would qualify him for relief from removal," particularly in light of the agency's goal that IJs complete cases within 18 months.

Khomyshyn's appeal to the Board challenged only the IJ's order denying his request for a continuance until he could

establish his eligibility for adjustment of status. The Board noted that he did not otherwise challenge his removability. Exercising *de novo* review, it affirmed the IJ's decision to deny the continuance request. In so doing, it highlighted the IJ's decision to deny "the continuance request because [Khomyshyn's] wife had not yet filed the I-130" and the fact that Khomyshyn "could not establish visa availability as the spouse of a lawful permanent resident." This reasoning, the Board concluded, was consistent with the approach it had announced in *Matter of Hashmi*, 24 I. & N. Dec. 785, 790-91 (B.I.A. 2009), a precedential decision providing a non-exhaustive list of factors that IJs should consider when deciding a request for a continuance. The Board criticized the IJ for taking into account his case-completion goals, but it concluded that remand was not necessary because that factor was not the IJ's primary consideration. Khomyshyn's petition for review, No. 10-3973, seeks relief from the final decision of the Board refusing a continuance and thus ordering his removal.

## II

Both petitioners argue that the IJ (coincidentally, the same one) abused his discretion in denying their requested continuances. But before we address that question, we must decide whether we have jurisdiction over these two petitions for review. In *Kucana v. Holder*, 130 S. Ct. 827 (2010), the Supreme Court held that the jurisdiction-stripping language of 8 U.S.C. § 1252(a)(2)(B)(ii) did not apply to actions of the Attorney General made discretionary by regulation, as opposed to statute. This led to a ruling in *Kucana* itself that judicial review of a motion to reopen removal proceedings in which the petitioner sought asylum was available, albeit only for abuse of discretion. This was so despite the fact that the ultimate question – whether to reopen – rests firmly within the Attorney General's discretion.

The BIA must reach a "final" decision on the overall removal proceeding before a petition may be filed in this

court, see 8 U.S.C. § 1252(a)(1) (providing for "[j]udicial review of a final order of removal"), but no one disputes that it has done so in both of the cases before us, even though the central legal issue relates to the continuances. A "final" judgment in a civil case in federal court is also normally necessary before an appeal may be taken to the court of appeals, see 28 U.S.C. § 1291, but that does not mean that the appellant is limited to making arguments about the ultimate merits of the case. We review bottom-line judgments – a point that is well illustrated by the rule permitting us to affirm on a basis not argued, as long as it finds proper support in the record. See, *e.g., Ruth v. Triumph Partnerships*, 577 F.3d 790, 797 (7th Cir. 2009); *Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007). Interim rulings and alternative theories alike are folded into the final judgment, and so the appellant may assert that the district court should have relied on a different ground, or granted a continuance, or denied a motion *in limine*, or compelled certain discovery. Just so here: Calma and Khomyshyn now face final orders of removal, but their petitions do not attack the merits of Board's decisions not to adjust their status. If they did, we would be compelled to dismiss both petitions for review for want of jurisdiction. Instead, Calma and Khomyshyn are asserting that the IJ ruled prematurely; they want continuances not for the purpose of digging up evidence that already exists, but to allow time for other agencies to complete their work. They argue that, at least in this situation, a challenge to the denial of the continuance is not covered by the jurisdiction-stripping rule. This is a point that deserves close attention.

In Calma's case, the government assumes without analysis that *Kucana* supports this court's jurisdiction and that our review is under the deferential abuse-of-discretion standard. In Khomyshyn's case, in contrast, the government has argued that *Kucana* holds only that our jurisdiction was not eliminated by 8 U.S.C. § 1252(a)(2)(B)(ii), which removes jurisdiction to review a decision of the Attorney General "the authority for which is specified under this subchapter to be

in the discretion of the Attorney General." In *Juarez v. Holder*, 599 F.3d 560 (7th Cir. 2010), however, decided two months after *Kucana*, we commented that *Kucana* did not affect 8 U.S.C. § 1252(a)(2)(B)(i), which removes jurisdiction over "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." See also *Leguizamo-Medina v. Gonzales*, 493 F.3d 772 (7th Cir. 2007). In both of the cases before us, the ultimate decision (adjustment of status) is governed by one of the statutes listed in section 1252(a)(2)(B)(i) – specifically, section 1255, which governs adjustment of status – and so the question before us is whether we have jurisdiction to review the denial of a continuance sought for the purpose of deferring final decision in that kind of case. Although *Kucana* is informative, it does not definitively resolve this issue. Indeed, the Court specifically left open "the question whether review of [decisions made discretionary by regulation] would be precluded if the court would lack jurisdiction over the alien's underlying claim for relief." *Kucana*, 130 S. Ct. at 839 n.17.

The government argues that because Khomyshyn's request for a continuance is "ancillary" to his underlying request for adjustment of status (and it might have said the same about Calma), this court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i). It finds support for this position in our pre-*Kucana* decisions in *Leguizamo-Medina, supra; Martinez-Maldonado v. Gonzales*, 437 F.3d 679, 683 (7th Cir. 2006) (precluding judicial review over motions to reopen or reconsider where court lacked ability to review underlying claim); and *Dave v. Ashcroft*, 363 F.3d 649, 652 (7th Cir. 2004) (same). It also points to two post-*Kucana* decisions, *Juarez*, 599 F.3d 560, and *Pawlowska v. Holder*, 623 F.3d 1138 (7th Cir. 2010), both of which it reads as adopting a broad reading of *Leguizamo-Medina.* A closer look at *Juarez* and *Pawlowska* and similar decisions in other circuits, however, reveals that the rule may not be as absolute as the government suggests. The rationale of our decision in *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004), also points toward a more nuanced approach to this question.

The best starting point for evaluating these arguments is with the decision in *Leguizamo-Medina.* In that case, decided three years before *Kucana*, petitioner Leguizamo-Medina had applied for adjustment of status as the spouse of a U.S. citizen. At the hearing evidence emerged suggesting that the marriage was a sham. Leguizamo-Medina's husband then withdrew his immediate relative petition, but later he submitted a new affidavit swearing that the marriage was genuine. The IJ resolved matters with a finding that the marriage was phony; this meant that Leguizamo-Medina was not of good moral character and thus was not entitled to cancellation of removal under 8 U.S.C. § 1229b (one of the statutes mentioned in § 1252(a)(2)(B)(i)). The BIA agreed, and the petitioner then advanced to this court.

We acknowledged that questions of law were reviewable pursuant to § 1252(a)(2)(D), but we pointed out that Leguizamo-Medina was raising only two arguments: first, that the IJ should have believed her testimony rather than her husband's, and second, that the IJ abused his discretion by declining to grant a continuance so that the husband's sister could testify. 493 F.3d at 774. We characterized both of those arguments as factual and thus concluded that neither fell within the scope of § 1252(a)(2)(D). We commented on the issue that was eventually resolved in *Kucana* (whether subpart (B)(ii) bars review only of decisions made discretionary by statute), but put that to one side since the relevant subpart for her case was (B)(i). The latter subsection, we said, "forecloses *all* review of decisions denying requests for cancellation of removal." We then continued as follows:

When an alien seeks not deferral of final decision, but just an opportunity to present more evidence, it is difficult to see how one could "review the denial of a continuance" at all. The thing being reviewed (when review is authorized) is the agency's final decision (here, a decision not to cancel the petitioner's removal). In an appeal from a district court, we don't "affirm the order sustaining the hearsay objection" or anything similar; we review the final decision (see 28 U.S.C. § 1291) to

determine whether the steps leading to that decision were erroneous (and, if erroneous, whether they were harmless). Just so here – with the difference that § 242(a)(2)(B)(i) puts the decision beyond review, and thus insulates the choices leading to that decision. When a decision is unreviewable, any opinion one way or the other on the propriety of the steps that led to that decision would be an advisory opinion.

*Id.* at 775.

This rationale, as the *Leguizamo-Medina* court implicitly acknowledged, is in real tension with the holding in *Subhan.* There we considered the question whether section 1252(a)(2)(B)(i) barred consideration of an IJ's refusal to grant a continuance to an alien who was waiting for the Department of Labor to issue a certificate allowing him to be employed in the United States. 383 F.3d at 593. The only comment the judge made as he ruled on Subhan's request was that Subhan might eventually be able to acquire lawful permanent resident status based on his employment, but that he was not eligible yet for that relief. This, as we pointed out, was a statement of the obvious. It was a description of what was going on, rather than an explanation or a reason.

In finding this decision reviewable, and outside the bar of (B)(i), we observed that Subhan was not asking us to review an adjustment-of-status decision – something that would have been barred by section 1255. Instead, he was asking us to review the propriety of the continuance – that is to say, whether the Board's decision to render its final ruling on the merits of the 1255 petition when it did was procedurally sustainable. (Part of our opinion examined the question whether review was barred by (B)(ii), but that is of no moment in the present case.) We concluded that Congress would not have wanted "to place beyond judicial review decisions by the immigration authorities that nullif[y] the statute." 383 F.3d at 595. Otherwise, "immigration judges [could] with impunity refuse to grant one-week continuances to persons in Subhan's position. And that would sound the

death knell for the request, since unlike most grounds for adjustment of status, adjustments based on employment, like those based on marriage to a U.S. citizen, cannot be pursued once the alien has been removed from the United States." *Id.* An allegation that the agency has "nullified" a statute surely raises a legal question, cognizable under § 1252(a)(2)(D).

That conclusion alone would be enough to permit us to see if a comparable problem taints either Calma's or Khomyshyn's cases. There is more, however, that must be said about the logic of the excerpt from *Leguizamo-Medina* that we have reproduced above. It is true, as the government argues, that *Juarez* and *Pawlowska* appear at first blush to reaffirm *Leguizamo-Medina* even after *Kucana.* But there is reason to question this conclusion. In *Juarez,* we noted that in cases where jurisdiction exists to review the underlying claim for relief, *Kucana* now requires the review of denied continuances for abuse of discretion. See 599 F.3d at 564-65. It was only in a footnote that the court suggested that *Leguizamo-Medina* was "unaffected by *Kucana.*" *Id.* at 565 n.4. More importantly, *Juarez* was a case in which the petitioners sought "various forms of relief from removal," at least one of which – asylum – was subject to judicial review. 599 F.3d at 561. The comment about *Leguizamo-Medina* was thus unnecessary to the outcome. There is also less to *Pawlowska* than meets the eye. There, although the IJ had denied a continuance where the underlying request was for adjustment of status to permanent residence, there was no need for this court to decide whether that denial was reviewable, because the IJ had made clear that he intended to exercise his discretion to deny the request for adjustment because of previous visa fraud in any event. 623 F.3d at 1140. Only after concluding that this merits-based reason was sufficient to preclude review did the court comment that *Leguizamo-Medina* bars review of a continuance decision that is "ancillary" to any of the forms of relief mentioned in (B)(i).

Other circuits have also stopped short of adopting the strong version of *Leguizamo-Medina.* They have acknowledged an inability to review analogous cases

without concluding that the absence of jurisdiction over the merits of the final relief sought *always* bars review of procedural requests like motions for a continuance or to reopen. See, *e.g., Alzainati v. Holder,* 568 F.3d 844, 849-50 (10th Cir. 2009) (finding jurisdictional significance, for § 1252(a)(2)(B)(i) purposes, in the ground on which the BIA bases its decision, reserving possibility of an embedded due process or other legal question); *Vargas v. Holder,* 567 F.3d 387, 390 (8th Cir. 2009) (considering implications of a broad view of jurisdiction-stripping under (B)(i) for motions to reopen a proceeding seeking relief for which review would be unavailable, and rejecting such a rule); *Obioha v. Gonzales,* 431 F.3d 400, 405-06 (4th Cir. 2005) (acknowledging no jurisdiction to review a decision to deny cancellation of removal, but noting that the BIA "never got that far" and finding reviewable its decision to deny a request to remand).

The common theme that runs through these cases is the importance of the relation between the resolution of the procedural request and the disposition of the underlying claim. The court's inability to review the underlying claim for relief "is, standing alone, an insufficient basis to preclude review" of a related procedural motion. *Alzainati,* 568 F.3d at 849. Instead, judicial review is foreclosed by § 1252(a)(2)(B)(i) only if the agency's rationale for denying the procedural request also establishes the petitioner's inability to prevail on the merits of his underlying claim. That was the case in *Pawlowska,* in which the IJ's decision rested on the petitioner's fraud. See, *e.g., Mariuta v. Gonzales,* 411 F.3d 361, 365 (2d Cir. 2005) ("Where a denial is based on the BIA's 'merits-deciding' analysis of the alien's entitlement to the ultimate relief sought, the denial [of a motion to reopen] may properly be said to be a decision 'under' the statutory provision providing that ultimate relief."); *Pilica v. Ashcroft,* 388 F.3d 941, 948 (6th Cir. 2004) ("[A] motion to reopen that does not involve the consideration of relief on the merits should not be treated as 'regarding' the granting of [permanent residence].").

In keeping with this analysis, we have asserted

jurisdiction to review procedural rulings like continuances in a number of cases decided after *Kucana*. Thus, for instance, in *Vahora v. Holder*, 626 F.3d 907 (7th Cir. 2010), we had to decide whether we had jurisdiction to review an IJ's refusal to close a petitioner's case administratively so that it could be joined with his parents' case. Noting there that *Kucana* established the reviewability of an alien's request for a continuance, we applied similar reasoning to administrative closures. *Id.* at 918. In *Mozdzen v. Holder*, 622 F.3d 680 (7th Cir. 2010), we exercised jurisdiction over the denial of a continuance in circumstances quite like those we face here – that is, a case in which there is no jurisdiction to review the underlying claim for relief. The *Mozdzen* petitioners sought a continuance to pursue cancellation of removal or adjustment of status after having committed visa fraud by falling into the trap laid by the sting known as Operation Durango. *Id.* at 682; see also *Wroblewska v. Holder*, No. 10-1618, 2011 WL 3773457 (7th Cir. Aug. 24, 2011). Even though we would not have been able to review the petitioners' applications for either cancellation or adjustment of status, see 8 U.S.C. §§ 1229b and 1255, we said that "[w]e review discretionary decisions such as denials of continuances under the deferential abuse of discretion standard." *Id.* at 684. In the end, this did the Mozdzens little good, as we went on to find no abuse of discretion, but this was a ruling on the merits rather than a jurisdictional decision.

We are persuaded that there are identifiable circumstances under which a critical procedural step in a removal proceeding, such as the denial of a continuance that is sought for purposes of allowing another agency to complete its review, the denial of a motion to reconsider, a refusal to remand, or a refusal to reopen a case, lies within our jurisdiction even though we are barred from evaluating the BIA's ultimate decision in the circumstances spelled out in § 1252(a)(2)(B)(i). [Because this opinion reconciles several competing lines of authority within the circuit, it has been circulated to all active judges pursuant to Circuit Rule 40(e). No judge in active service voted to hear these cases *en banc*.]

Sometimes review will be possible because, as in *Subhan*, the challenged action effectively nullifies the statutory scheme and thus for all practical purposes raises a question of law. Sometimes review will be possible because, as in *Juarez*, the request for the unreviewable relief will be coupled with a request for relief like asylum that is reviewable. If, however, it is impossible to distinguish the challenged action from the determination on the merits, then jurisdiction is lacking and the petition must be dismissed.

It is worth recalling that a central theme in *Kucana* was the importance of judicial review to protect the procedural fairness of the agency process. As the Supreme Court put it, motions to reopen are a "procedural device serving to ensure that aliens are getting a fair chance to have their claims heard." 130 S. Ct. at 837. This purpose is, if anything, even more important for aliens like Calma and Khomyshyn who will be strictly barred from seeking review of the denial of their claims for adjustment of status. *Kucana* emphasized "the presumption favoring judicial review of administrative action." *Id.* at 839. It noted that "[w]hen a statute is reasonably susceptible to divergent interpretation," it should be construed in a way that permits review. *Id.* The provision here, § 1252(a)(2)(B)(i), prohibits judicial review of decisions on adjustment of status, but it says nothing about review of antecedent procedural decisions such as continuances that shape the final outcome. We note that our sister circuits have come to conflicting results on the question whether judicial review is ever available in cases where review of the underlying claim for relief is foreclosed. Compare *Thimran v. Holder*, 599 F.3d 841, 845 (8th Cir. 2010) (yes), with *Freeman v. Holder*, 596 F.3d 952, 956 n.2 (8th Cir. 2010) (no); and compare *Assaad v. Ashcroft*, 378 F.3d 471, 474 (5th Cir. 2004) (*per curiam*) (no), with *Rodriguez*, 253 F.3d at 800 (yes, unless the Board addressed the merits of the request for relief).

We should not confuse the unavailability of judicial review with the unimportance of the kinds of relief that are covered by § 1252(a)(2)(B)(i): waivers of inadmissibility (§§ 1182(h) and 1182(i)); cancellation of removal (§ 1229b); voluntary

departure (§ 1229c), and adjustment of status (§ 1255). These are all measures that Congress has chosen to make available to deserving aliens; it has simply chosen at the same time to make the competent agency's decision on the merits of those types of relief final. Sometimes, when a continuance is requested, the court may not even know what is at stake. If, for example, an alien has appeared before an IJ asking both for asylum (a reviewable decision) or voluntary departure (a non-reviewable decision), and asks the IJ for a continuance so that she can decide which one to pursue, the grant or denial of such a continuance can be reviewed without upsetting the ultimate finality of the decision on the merits. Jurisdiction is something that must be ascertainable *ex ante*; it cannot depend on events that occur months or years after the petition is filed.

In summary, decisions like the rulings on continuances that Calma and Khomyshyn have challenged, which do not implicate the merits of a final unreviewable order but instead merely defer the resolution of the merits so that the process as a whole can be completed with integrity, may in the right circumstances, and do here, fall within our jurisdiction. *Dave v. Ashcroft*, 363 F.3d 649, if it survived *Kucana*, is distinguishable from the cases before us because all three of the decisions at issue in *Dave* – a ruling on cancellation of removal, a ruling on a motion to reconsider the denial of cancellation, and a ruling on the refusal to reopen the proceeding – were closely linked with the merits of the unreviewable decision on cancellation. And *Huang v. Mukasey*, 534 F.3d 618 (7th Cir. 2008), relied entirely on the decision in *Kucana* from this court that the Supreme Court reversed. See 533 F.3d 534 (7th Cir. 2008). Having satisfied ourselves that we have jurisdiction over these petitions, we can move on to the merits.

## III

Unfortunately for both petitioners, our discussion here will be brief. The standard of review, as we have already noted,

is one that gives great deference to the responsible IJ. An IJ has the discretion to grant a continuance for "good cause shown," see 8 C.F.R. § 1003.29, but as long as he gives a reason for his decision, this court will uphold the decision "unless it 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Victor v. Holder,* 616 F.3d 705, 708 (7th Cir. 2010), quoting *Achacoso-Sanchez v. INS,* 779 F.2d 1260, 1265 (7th Cir. 1985); see *Subhan,* 383 F.3d at 595. In addition, the principle of harmless error applies to administrative proceedings in general, and to immigration rulings in particular. See *Yuan v. Att'y Gen. of the United States,* 642 F.3d 420, 427 (3d Cir. 2011); *Victor,* 616 F.3d at 710; *Japarkulova v. Holder,* 615 F.3d 696, 701 (6th Cir. 2010); *Alam v. Gonzales,* 438 F.3d 184, 187-88 (2d Cir. 2006); *Ngarurih v. Ashcroft,* 371 F.3d 182, 191 n.8 (4th Cir. 2004).

In Calma's case, it is the harmless error principle that dooms his effort to move ahead with his petition. The Board has already dismissed Calma's appeal from the revocation of his son's I-130 petition. That decision means that Calma cannot show prejudice from the IJ's denial of his continuance motion. Without the successful I-130 petition, he cannot adjust his status. See 8 U.S.C. § 1255(a); *Lockhart v. Napolitano,* 573 F.3d 251, 254 (6th Cir. 2009); *Afzal v. Holder,* 559 F.3d 677, 678 (7th Cir. 2009); *Labojewski v. Gonzales,* 407 F.3d 814, 822 (7th Cir. 2005). No amount of deferral of Calma's proceedings could have any effect on the final outcome. For this reason, his petition for review must be denied.

Khomyshyn faces a different problem. The IJ in his case provided a sound reason for denying the request for a continuance. The judge explained that four years was too long to wait to allow for Khomyshyn's adjustment, and he refused to speculate about the ultimate eligibility of Khomyshyn's wife for naturalization (not to mention what steps on her husband's behalf she would or would not take if she attained U.S. citizenship). Khomyshyn argues that the IJ ignored his argument that his wife would soon be eligible

for citizenship, but the record does not support him. The IJ explicitly acknowledged this possibility, but then refused, in the absence of any evidence that naturalization was necessarily forthcoming, to assume that it would come to pass. There was no abuse of discretion in the IJ's decision to take into account the speculative nature of Khomyshyn's hopes for later adjustment, as well as the potentially lengthy time that would elapse while he waited.

For these reasons, we DENY both Calma's petition for review (No. 10-2795) and Khomyshyn's petition for review (No. 10-3973).