In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1634, 11-2914, 11-3512

ROBERTO CRUZ-MAYAHO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. 098-501-242

ARGUED SEPTEMBER 11, 2012—DECIDED OCTOBER 17, 2012

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Roberto Cruz-Mayaho has been fighting removal from the United States with every tool he can find, and then some. His is a somewhat unusual case, however, because (at least initially) he was neither claiming a right to asylum or related relief nor was he asserting that he has a right to adjust his status because of something like employment or a new marriage to a

U.S. citizen. Instead, desperate to avoid being returned to his native Mexico, he has pursued cancellation of removal based on alleged "exceptional and extremely unusual hardship" to his young U.S.-citizen children. The Board of Immigration Appeals denied his original application in 2008, and since that time it has denied a long line of motions to reopen and to reconsider its ruling. The three petitions for review now before us are the latest to reach this court. In the hope that this will bring Cruz-Mayaho's saga to a close, we deny these petitions for review.

**I**

In January 1989, Cruz-Mayaho entered the United States for the first time. He did so "without inspection," as the immigration authorities put it, and thus was in the country without proper authorization. See *Marin-Garcia v. Holder,* 647 F.3d 666, 668 (7th Cir. 2011). He may have traveled to and from Mexico over the years, but the critical fact for our purposes is the issuance, on October 28, 2005, of a Notice to Appear, which is the document used by Immigration and Customs Enforcement (ICE), an agency located within the Department of Homeland Security, to initiate removal proceedings. When his case came before an immigration judge (IJ), Cruz-Mayaho applied for cancellation of removal pursuant to 8 U.S.C. § 1229b(b), a statute that gives the Attorney General discretionary power to allow an alien to remain in the United States if certain criteria are met. The IJ concluded that Cruz-Mayaho met the requirement of

10 years' continuous physical presence, that he was a person of good moral character, and that he had no disqualifying convictions on his record. But the final requirement is that the alien must "establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States." § 1229b(b)(D). This means, according to the Board, "hardship to his or her qualifying relatives that is substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here." *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 321 (BIA 2002) (internal quotation marks omitted). Cruz-Mayaho was not able to point to anything out of the ordinary, and so the IJ denied his application for cancellation of removal. On July 17, 2008, the Board affirmed without opinion.

Cruz-Mayaho was not ready to give up, however, and so he tried to challenge the Board's decision in a number of ways. He began, appropriately enough, with a petition for review of the Board's decision; he filed that on August 14, 2008. We refer to it as Petition #1. The next day, he filed a Motion to Reconsider with the Board; we refer to it as Reconsider #1 and follow the same format for later such motions. On November 7, 2008, the Board denied Reconsider #1; Cruz-Mayaho then, on November 12, 2008, filed Petition #2 in this court, challenging the denial of his motion to reconsider. Before either of his two petitions was resolved, on January 26, 2009, he filed a Motion to Reopen (Reopen #1) with the Board.

On August 11, 2009, this court dismissed Petitions #1 and #2 for lack of jurisdiction. See *Cruz-Mayaho v. Holder,* Nos. 08-3068 & 08-3873, 2009 WL 2445064 (7th Cir. Aug. 11, 2009). Shortly thereafter, on September 30, 2009, the Board denied Reopen #1 as untimely and declined to use its discretion to reopen *sua sponte*. Cruz-Mayaho promptly followed up on October 29, 2009, with a motion to reconsider *that* decision, bringing us up to Reconsider #2. The Board denied Reconsider #2 in an order dated February 26, 2010. On March 16, 2010, Cruz-Mayaho filed a petition for review from the Board's rejection of Reconsider #2 (Petition #3). That was docketed as case 10-1634 in this court; it is the first matter before us now. Not content to put all of his eggs in that basket, however, on March 26, 2010, Cruz-Mayaho filed yet another motion to reconsider the denial of Reconsider #2 (Reconsider #3), and he added a new motion to reopen (Reopen #2) in which he sought for the first time to apply for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The Board denied Reconsider #3 and Reopen #2 in an order issued September 8, 2010. In that order, the Board construed the motion as solely one for reconsideration, and it denied it as numerically barred. Cruz-Mayaho filed a petition for review from that decision (Petition #4). Without opposition from the government, this court on April 27, 2011, remanded Petition #4 to the Board so that it could consider Reopen #2.

That brings us to the final chapter. On August 4, 2011, the Board denied Reopen #2 as untimely, numerically barred, unsupported by the evidence, and insufficient to

support relief under CAT. Cruz-Mayaho filed Petition for Review #5 from that decision on August 22, 2011; this petition is case 11-2914. Once again, Cruz-Mayaho coupled his petition with another effort at reconsideration: he filed Reconsider #4 on August 29, 2011, as well as Reopen #3 on the same date. The Board denied both of those motions on October 27, 2011, and Cruz-Mayaho filed Petition #6 from that decision on November 7, 2011; this is case 11-3512. We have consolidated the three petitions for review now pending before us for disposition.

## II

The Board had authority over Cruz-Mayaho's numerous motions to reopen and to reconsider under 8 C.F.R. § 1003.2(a) and 8 U.S.C. § 1229a(c)(6)-(7). The petitions for review before us were timely filed within 30 days of the Board's decisions. Our jurisdiction over these petitions, however, is limited by the immigration statutes. Under 8 U.S.C. § 1252(a)(2)(B)(i), we have no jurisdiction to review "any judgment regarding the granting of relief under . . . 1229b [cancellation of removal]," except insofar as "constitutional claims or questions of law" are raised. 8 U.S.C. § 1252(a)(2)(D). Ordinarily, if we lack jurisdiction to review an order, then we also lack jurisdiction over motions to reopen or reconsider that order, see, *e.g., Martinez-Maldonado v. Gonzales*, 437 F.3d 679, 683 (7th Cir. 2006), but in light of the Supreme Court's decision in *Kucana v. Holder*, 558 U.S. 233 (2010), we have recognized that judicial review is foreclosed "only if the

agency's rationale for denying the procedural request also establishes the petitioner's inability to prevail on the merits of his underlying claim." *Calma v. Holder*, 663 F.3d 868, 876 (7th Cir. 2011). As we put it in *Calma*:

> [T]here are identifiable circumstances under which a critical procedural step in a removal proceeding, such as the denial of a continuance that is sought for purposes of allowing another agency to complete its review, the denial of a motion to reconsider, a refusal to remand, or a refusal to reopen a case, lies within our jurisdiction even though we are barred from evaluating the BIA's ultimate decision in the circumstances spelled out in § 1252(a)(2)(B)(i). . . . Sometimes review will be possible because . . . the challenged action effectively nullifies the statutory scheme and thus for all practical purposes raises a question of law. Sometimes review will be possible because . . . the request for the unreviewable relief will be coupled with a request for relief like asylum that is reviewable. If, however, it is impossible to distinguish the challenged action from the determination on the merits, then jurisdiction is lacking and the petition must be dismissed.

*Id.* at 876-77.

None of the circumstances we identified in *Calma* applies to Cruz-Mayaho, and so that takes us back to the default rule under which we do not have jurisdiction over the motions to reopen or reconsider if we lack jurisdiction over the underlying order. Applying that rule, we conclude that, for the most part, we lack jurisdiction

over the Board's decisions. To the extent that we have jurisdiction, our review is only for abuse of discretion. In the end, these distinctions make little practical difference here: Cruz-Mayaho is not entitled to relief no matter how his claims are viewed.

## III

As the Board pointed out repeatedly, the key date for Cruz-Mayaho is July 17, 2008. This was when the Board denied his application for cancellation of removal. All of his later efforts to reverse the consequences of that decision are affected by it. Cruz-Mayaho had 90 days from that date in which he could file, by right, a motion to reopen. 8 U.S.C. § 1229a(c)(7)(C)(i). (He did file a petition for review within the mandatory 30-day period.) With respect to his first motion to reopen, however, Cruz-Mayaho argues for a different starting point—the date when the Board denied his motion to reconsider the original affirmance. We recently and definitively rejected that position in *Sarmiento v. Holder,* 680 F.3d 799 (7th Cir. 2012). We did so for good reasons: the time limits would mean nothing if people were free to file one motion to reconsider after another, while they collect new evidence to be used in a motion to reopen. Two of our sister circuits have come to the same conclusion. See *Vega v. Holder*, 611 F.3d 1168, 1170-71 (9th Cir. 2010); *William v. INS,* 217 F.3d 340, 342-43 (5th Cir. 2000). There is also no authority for the proposition that the pendency of a petition for review has any effect on these time limits. Since a motion to reconsider does not

itself toll the 90-day period, it follows that a petition for review from the denial of such a motion similarly has no such effect. All of this means that the Board was well within its rights to hold as a matter of law that Cruz-Mayaho's first motion to reopen was untimely, and also that as a matter of fact Cruz-Mayaho was not entitled to reconsideration of that decision. That is enough to resolve case No. 10-1634 with a holding that the legal ruling was correct and that we have no jurisdiction to review the factual determination.

It was in Motion to Reopen #2 that Cruz-Mayaho added his arguments about asylum and the Convention Against Torture. He argues that he is entitled to relief because conditions in Mexico have been generally bad for some time now, and that they have become even worse since the Board initially denied his petition for cancellation. The existence of unrest in Mexico is well known: there is even a Wikipedia entry about the Mexican Drug War, see en.wikipedia.org/wiki/Mexican_ Drug_War; it indicates that, especially since the early 2000s, the Mexican army has been battling the cartels. From time to time, grotesque events such as the beheading of victims have occurred. One article in the record reports that killings from drug-related crimes increased from 2,700 in the country in 2007 to 3,700 in 2008. See *Drug Killings Haunt Mexican Schoolchildren,* N.Y. Times Oct. 20, 2008, at A1. The World Bank presents an even more sobering picture: it estimates that more than 15,000 people were killed in 2010 in drug-related vio- lence. See http://www.worldbank.org/en/country/mexico/ overview. Cruz-Mayaho stresses that two other aliens,

Jesus Salgado-Salgado and Carlos Frausto-Jarimillo, were granted cancellation on this basis. He uses that fact both to illustrate why he believes that he too is entitled to some form of relief and to support his equal protection claim (which we discuss below).

The government presents a number of arguments in support of the Board's decision to deny Cruz-Mayaho's second motion to reopen. Among them are the fact that his application for asylum was filed well outside the one-year time during which such claims may be raised; the fact that he failed in his motion to reopen to carry forward his claim under the CAT; and the fact that his evidence fails to show anything but generally bad conditions in many parts of Mexico, without shedding light on how things have worsened or on Cruz-Mayaho's ability (or lack thereof) to relocate to a relatively safer area, and without asserting that he would be persecuted on account of any of the five protected grounds recognized in the statute (race, religion, nationality, political opinion, or social group). See 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 1208.13(b). At oral argument, the panel asked Cruz-Mayaho's lawyer whether the logical implication of his argument was that every Mexican currently living in the United States without proper authorization was entitled to asylum or cancellation. Although we did not receive a one-word answer, we inferred from the discussion that the answer was yes. That of course is inconsistent with the statute, and (like the Board) we are obliged to follow the law. We conclude that the government has correctly characterized the record here. Even if Cruz-Mayaho is correct that condi-

tions in Mexico are dangerous, he is not entitled to asylum, cancellation of removal, or relief under the CAT unless he meets the statutory or treaty criteria. The Board reasonably concluded that he failed to meet that burden. Even if we thought that there was some evidence in the record supporting his arguments, that is not enough to allow him to prevail. Indeed, we are hard pressed to find any legal argument in this petition for review that would support our jurisdiction. We thus dismiss case No. 11-2914 for want of jurisdiction.

Finally, we have in case No. 11-3512 Cruz-Mayaho's challenge to the Board's denial of his fourth motion to reconsider and his third motion to reopen. The Board found no error in its earlier determinations. We note, however, that it unfortunately offered as one reason for its decision its perception that Cruz-Mayaho had not submitted any evidence about conditions in Mexico at the time of his original hearing in 2007, and thus it had no way of assessing whether matters had gotten worse by 2011. This strikes us as needlessly picky: the Board has seen mountains of evidence about conditions in Mexico over the years, and as an expert agency it is able to discern the trends. Nonetheless, any error it may have made in this respect is harmless. The chart that the Board supposedly overlooked, which came from an article in Time magazine showing the increase in the murder rate in Mexico from 2005 to 2010, would not by itself have been enough to require reopening. New evidence may not be considered in a motion to reconsider, and so the chart was not relevant to that part of his case.

Last, we say a word about Cruz-Mayaho's assertions that the Board violated his due process and equal protection rights in one or more of the rulings involved in these petitions. He asserts that the Board's alleged failure to consider the violence in Mexico somehow violated his due process rights, but we cannot see how. The argument is a non-starter because Cruz-Mayaho lacked a protected liberty interest in the discretionary relief of a grant of a motion to reopen. See, *e.g.*, *Khan v. Mukasey*, 517 F.3d 513, 518 (7th Cir. 2008). He fares no better with his equal protection claim. The government suggests that he may have forfeited this argument, but we are satisfied that he attempted to present it to the Board, and so it is neither forfeited nor unexhausted (at least with respect to the comparison with Salgado-Salgado). It is, however, without merit. In essence, Cruz-Mayaho is raising a "class-of-one" argument. But no matter whether one takes the view of this court's lead opinion in *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (opinion of Posner, J.), or the dissent registered by a plurality of the court, *id.* at 905 (opinion of Wood, J.), Cruz-Mayaho cannot prevail. There is neither evidence of any improper motive directed personally against Cruz-Mayaho on the Board's part, nor does its decision lack a rational basis. Salgado-Salgado's case came up in a different procedural posture—he was seeking a waiver of inadmissibility for adjustment of status, and Frausto-Jarimillo's petition was unopposed. Worse, Cruz-Mayaho never raised his arguments about Frausto-Jarimillo before the Board, and thus he may not rely on them here. We therefore deny the petition for review in case 11-3512.

**IV**

Cruz-Mayaho's biggest problem is that he failed to persuade the Board back in 2008 that his U.S.-citizen children would experience extremely unusual hardship if he were to be removed from the country. That decision is not before us now; it became final years ago. None of the rest of the arguments he has presented—both those we have discussed and others that we have not thought necessary to address—compel a different result. Finding no abuse of discretion in the decisions of the Board before us in Nos. 10-1634 and 11-3512, we DENY those petitions for review. We DISMISS No. 11-2914 for want of jurisdiction.