In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3471

DANIELA E. GUERRA ROCHA, *et al.*,

*Petitioners*,

*v.*

WILLIAM P. BARR, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the Board of Immigration Appeals.
Nos. A208-575-411, A208-575-412 and A208-575-413

ARGUED NOVEMBER 4, 2019 — DECIDED MARCH 4, 2020

Before WOOD, *Chief Judge*, and BAUER and BRENNAN, *Circuit Judges*.

WOOD, *Chief Judge*. Daniela Guerra Rocha has filed a petition for review of a decision of the Board of Immigration Appeals (BIA or Board). The BIA held that Guerra Rocha and her sons are subject to removal from the United States, despite the fact that she has made a *prima facie* showing of eligibility for nonimmigrant visa status. Because the BIA failed to render a reasoned decision that accords with its

precedents, we grant Guerra Rocha's petition and remand for further proceedings.

## I

Guerra Rocha openly entered the United States with her two sons, Jovany and Carlos, in June 2016. She presented herself at a point of entry in Arizona, asserting that she had fled from persecution at the hands of Mexico's Los Rojos cartel. She sought asylum, and after passing a credible-fear interview, she was paroled into the United States while she waited for an immigration hearing.

During that period, the family went to stay with a friend named Lorenzo Torres, who lived in Chicago. As it turned out, Torres was a violent drunk. He began to threaten Guerra Rocha; later, the threats became abuse. During a particularly frightening incident, a drunken Torres brandished a machete at Guerra Rocha and her sons. A group of neighbors witnessed the attack and called the police, who arrested Torres. Because Guerra Rocha could no longer remain in Torres's apartment and she did not know anyone else in Chicago, she and her sons relocated to Miami.

Soon after she moved, however, the Chicago police asked her to return to assist the authorities with the case against Torres. She agreed to do so. Still knowing no one in Chicago, she stayed in a series of shelters for victims of domestic violence. Throughout that time, she cooperated with the police and ultimately testified at Torres's criminal trial about his violent propensities and the events that led to the assault. In spite of Guerra Rocha's testimony, the court acquitted Torres.

Guerra Rocha's cooperation in the case entitled her to apply for a "U visa," which is a nonimmigrant visa that allows a victim of a violent crime who provides assistance to law enforcement to remain in the United States for four years. 8 U.S.C. § 1101(a)(15)(U). United States Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security (DHS), administers the U-visa program. The U-visa application process moves slowly, with an average processing time of 52 months.

Nothing happened with respect to Guerra Rocha's asylum petition until, at a December 2016 hearing, an immigration judge (IJ) found Guerra Rocha and her family removable but granted a continuance to allow Guerra Rocha to obtain counsel and to prepare an application for relief. She took advantage of that opportunity. With the assistance of counsel, she filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) in February 2017. After a hearing, the IJ continued the proceedings to December 15, 2017. Guerra Rocha filed her application for the U visa on October 10, 2017, submitting all required documents including a certification from the Chicago Police Department that confirmed her assistance in the investigation into Torres. She also filed petitions on behalf of her two sons as derivative applicants.

Days after Guerra Rocha submitted her U-visa application, the immigration court surprised her by moving up the date of her hearing from December 15 to October 20, because the judge had been reassigned to a different court. This sudden change left Guerra Rocha with only two days to prepare for the hearing. On October 23, 2017, the IJ found

Guerra Rocha ineligible for any form of relief. The judge determined that the threats Guerra Rocha had received from Los Rojos did not amount to persecution and that she had failed to show that she could not relocate to avoid the cartel.

Because Guerra Rocha had applied for the U visa less than two weeks earlier, she had not yet received the receipts for her applications at the time of the hearing. These receipts were postmarked October 25, well in advance of the originally scheduled December date of the hearing but after the rescheduled date. Guerra Rocha's counsel did not mention the U-visa petition at the October 20 hearing, however, because he thought that it would be pointless without the receipts in hand. Thus, the IJ did not evaluate whether Guerra Rocha's case should be continued during the pendency of her U-visa application.

In November, Guerra Rocha appealed the decision of the IJ to the Board. Guerra Rocha asked the BIA to reverse the IJ's ruling on her asylum petition, and she sought a remand to the IJ so that the judge could consider whether she was entitled to a continuance on the ground that she was *prima facie* eligible for U-visa status. DHS opposed her motion to remand, arguing that the U-visa application was collateral to the removal proceedings because (it insisted) an immigration court cannot grant a U visa. We later made it clear that the immigration court does have the power to waive an alien's inadmissibility, grant continuances, defer removal, and take other similar steps that may be required before a U visa is issued. We held "that 8 C.F.R. § 1003.10(a) permits immigration judges to exercise all of the Attorney General's powers, except those expressly reserved by some other regulation." *Baez-Sanchez v. Barr*, 947 F.3d 1033, 1035

(7th Cir. 2020), citing *Baez-Sanchez v. Sessions*, 872 F.3d 854 (7th Cir. 2017) (a case also dealing with the process for obtaining a U visa).

The Board rejected all of Guerra Rocha's arguments. It affirmed the denial of her applications for asylum, withholding of removal and protection under the CAT. Additionally, it summarily dispensed with her request for a remand in which she could seek a continuance in order to pursue the U visa, writing cryptically that in light of all relevant considerations, Guerra Rocha was not entitled to a continuance. The Board additionally observed that Guerra Rocha could still pursue an administrative stay of removal from DHS during the pendency of the U-visa petition.

Guerra Rocha's petition for review raises only the BIA's determination that she is not entitled to a remand for the purpose of deciding whether her pending U-visa application entitles her to a continuance.

## II

### A

Before we turn to the merits of this petition for review, we say a brief word about our jurisdiction. (Neither party mentioned this point, but we are obliged to satisfy ourselves that jurisdiction is secure.) Guerra Rocha's immediate argument in this case is that the IJ should have granted her a continuance. We have recognized that although 8 U.S.C. § 1252(a)(2)(B)(ii) prohibits review of issues that the statute designates as discretionary, there are other circumstances in which the denial of a continuance is reviewable. In *Calma v. Holder*, 663 F.3d 868 (7th Cir. 2011), we noted the importance of the relation between the resolution of a procedural

request, such as a motion for a continuance, and the disposition of the underlying claim. *Id.* at 876. Judicial review is barred if the disposition of the procedural motion is, *de facto*, a decision on the merits of an issue that is made unreviewable by law. *Id.*; see 8 U.S.C. § 1252(a)(2)(B) (listing such issues). Nonetheless, following the guidance we received in *Kucana v. Holder*, 558 U.S. 233 (2010), which held that the jurisdiction-stripping language of section 1252(a)(2)(B)(i) does not apply to actions of the Attorney General made discretionary by *regulation*, we have held that "*Kucana* … requires the review of denied continuances for abuse of discretion." *Calma*, 663 F.3d at 875. The government argued for that standard of review in its brief here; it is consistent with our decisions; and we see no reason to shift course now.

We hasten to add that we are aware that the Supreme Court has under consideration several cases that might ultimately bear on this issue. They include *Nasrallah v. Barr*, No. 18-1432 (argued March 3, 2020), which raises the question whether, notwithstanding 8 U.S.C. § 1252(C), factual findings underlying denials of withholding or deferral of removal are reviewable; *Ovalles v. Barr*, No. 18-1015 (argued December 9, 2019), which asks whether the criminal alien bar contained in 8 U.S.C. § 1252(a)(2)(C) prohibits a court from reviewing the agency's assessment of diligence for purposes of equitable tolling; and *Guerrero-Lasprilla v. Barr*, No. 18-776 (argued December 9, 2019), which raises the question whether a request for equitable tolling is judicially reviewable as a question of law. It is possible that one or more of the decisions in these cases may bear on the issue before us, but none is squarely on point. We think that the best course is to follow our own well

established rule, unless and until the Supreme Court instructs us otherwise.

B

The central issue before us is whether the BIA adequately considered and applied its own precedents in disposing of Guerra Rocha's case. Under the REAL ID Act of 2005, we have jurisdiction to review only constitutional claims and questions of law on a petition to review an immigration court's decision. 8 U.S.C. § 1252(a)(2)(D). The BIA's failure to address the critical elements of a legal issue qualifies as a reviewable question of law. *Jawad v. Holder*, 686 F.3d 400, 404 (7th Cir. 2012).

We review the BIA's denial of a motion to remand for a continuance under the abuse-of-discretion standard. *Toure v. Barr*, 926 F.3d 403, 407 (7th Cir. 2019). A misstep that serious occurs only when the Board makes its decisions without a rational explanation, when it inexplicably departs from established policies or when its decision rests on an impermissible basis. *Yi Xian Chen v. Holder*, 705 F.3d 624, 630 (7th Cir. 2013). This standard encompasses a claim that the Board misread its own precedent. *Cruz-Moyaho v. Holder*, 703 F.3d 991, 997 (7th Cir. 2012). BIA decisions "must be supported by a reasoned explanation that currently reflects the law." *Moosa v. Holder*, 644 F.3d 380, 386 (7th Cir. 2011). The "brevity of [a BIA] decision" can give rise to an inference that "the BIA committed legal error." *Iglesias v. Mukasey*, 540 F.3d 528, 532 (7th Cir. 2008).

The BIA's decision *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807 (B.I.A. 2012), is its last word on how an applicant for a U visa may obtain a continuance. It instructs that the IJ must

first ask whether DHS supports or opposes the applicant's motion for a remand. If DHS does not oppose the motion, then "the proceedings … should be continued … in the absence of unusual, clearly identified, and supported reasons for not doing so." *Id*. at 813. If DHS does oppose the motion, then the IJ's primary concern should be "the likelihood of success" of the application. *Id*. This involves an evaluation of the applicant's *prima facie* eligibility for the U visa. If the applicant has shown that she is *prima facie* eligible, then there is a rebuttable presumption that the IJ should grant the continuance. *Id*. Only then should the judge consider other factors, including "the length of time the application has been pending, the number of prior continuances that the court has provided, and additional relevant considerations in deciding whether a further continuance is warranted under the circumstances." *Id*. at 815; see also *Matter of Rajah*, 25 I. & N. Dec. 127, 130 (B.I.A. 2009) ("As a general rule, there is a rebuttable presumption that an alien who has filed a prima facie approvable application with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time."). Notably, the Attorney General does not dispute that Guerra Rocha is *prima facie* eligible for a U visa.

The BIA performed only a cursory analysis of Guerra Rocha's case—one that fell considerably short of *Sanchez Sosa*'s requirements. It dispensed with her argument in a single sentence: "[C]onsidering all relevant factors, including the DHS's opposition to the motion, the collateral nature of the relief sought through the U-visa petition, the timing of the request, and the likely delay of these administrative proceedings, the respondent has not shown that a remand is

warranted." The BIA did not even mention the likelihood that Guerra Rocha's application would be granted.

This analysis was not sufficient. Although we have held that the Board is not required to "write an exegesis on every contention" in a particular case, it must nonetheless "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000) (quoting *Becerra-Jimenez v. INS*, 829 F.2d 996, 1000 (10th Cir. 1987)). The boilerplate paragraph we just quoted does not meet that standard. It totally ignores the most important question identified in *Sanchez Sosa*: the likelihood that the applicant's U-visa petition will be granted. If the Board believed that Guerra Rocha's request for a continuance was not warranted even though her application for the U visa was *prima facie* valid, it had to explain why it took that position. It is not enough merely to announce that it has taken account of all relevant factors.

The Attorney General urges that *Sanchez Sosa* must be read in light of *Matter of L-A-B-R-*, 27 I. & N. Dec. 405 (B.I.A. 2018). We do not disagree with him, but we do not see how *Matter of L-A-B-R-* helps. It states that, when deciding whether to grant a continuance, an immigration judge must consider "germane secondary factors," such as "the respondent's diligence in seeking collateral relief, DHS's position on the motion for continuance, and concerns of administrative efficiency." 27 I. & N. Dec. at 415; see also *id*. ("[I]t may … be appropriate to consider the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the

continuance motion.") But *Matter of L-A-B-R-* then restates the core holding of *Sanchez Sosa*, that "[t]he likelihood that the alien will receive the pursued collateral relief and that such relief will materially affect the outcome of the removal proceedings is the *primary* consideration" in the U-visa context. *Id*. at 415 (emphasis added). Thus, *Matter of L-A-B-R-* does not cure the deficiencies in this record.

We have not been asked in this case to decide whether, when all is said and done, an IJ could find that Guerra Rocha is or is not entitled to a continuance, or a U visa, or asylum. Nor do we offer any gratuitous opinion on those big questions. Our only role is to ensure that the BIA handles Guerra Rocha's petition in accordance with the procedures that the Board itself has established. And we must ensure that the Board does not ignore its own precedents in disposing of an immigrant's application for relief or announce that it has considered the legally relevant criteria when it has not done so.

We are aware that the Board has an appalling workload and an enormous backlog of cases. See, *e.g.*, *Amid 'nightmarish' case backlog, experts call for independent immigration courts*, ABA Journal (Aug. 9, 2019), https://www.americanbar.org/news/abanews/aba-news-archives/2019/08/amid-_nightmarish-case-backlog--experts-call-for-independent-imm/. But Guerra Rocha has no control over the pace at which USCIS processes applications. Moreover, the backlog and slow processing time for U visas do not suffice, under the Board's own rules, to justify the denial of a continuance. *Matter of Sanchez Sosa*, 25 I. & N. Dec. at 814; see also *Wu v. Holder*, 571 F.3d 467, 470 (5th Cir. 2009) (holding that an immigration judge abused his

discretion "in relying upon [a] delay … as the sole reason for denying [a] motion for continuance"); *Malilia v. Holder*, 632 F.3d 598, 606 (9th Cir. 2011). The Board cannot solve its own problems by arbitrarily denying petitions before it.

### III

The BIA abused its discretion by disregarding the criteria it committed itself to apply in *Sanchez Sosa* and *Matter of L-A-B-R-*, when it refused to remand Guerra Rocha's case to the IJ for consideration of her request for a continuance. We therefore GRANT Guerra Rocha's petition and REMAND for further proceedings consistent with this opinion.