In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-2536

SALEY SOULEY,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR,
Attorney General of the United States,

*Respondent*.

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A088-646-916

ARGUED MARCH 3, 2015 — DECIDED MARCH 11, 2015

Before POSNER, KANNE, AND TINDER, *Circuit Judges*.

PER CURIAM. Saley Souley, a citizen of Niger, petitions for review from the denial of his request to continue his removal proceedings to give his U.S. citizen wife time to file a second I-130 visa petition on his behalf (the government had already denied her first). The IJ thought her second, unfiled petition had no greater chance of success and denied the request for a continuance. Because Souley did not present evidence of

good cause for the continuance, we deny the petition for re-
view.

Souley entered the United States in 2005 on a visitor's
visa (the validity of which is not reflected in the record) and
overstayed. In 2008 the Department of Homeland Security
placed Souley—at the time living in Harrisburg, Pennsylva-
nia—in removal proceedings for remaining in the United
States without authorization, *see* 8 U.S.C. § 1227(a)(1)(B), and
being inadmissible at the time of his entry because he lacked
a valid entry document, *see id.* § 1227(a)(1)(A). Souley failed
to appear for his hearing in August 2008, so an IJ in Phila-
delphia ordered him removed in absentia.

Apparently unaware of the removal order, Souley
moved from Pennsylvania to Indiana and married Rochelle
Thornton, a U.S. citizen, in June 2009. Nearly two years later,
Souley, assisted by counsel, filed an application to adjust his
status, and Thornton applied concurrently on his behalf for
an I-130 "alien relative" visa—the first step toward adjusting
his      status      to      permanent      resident,      *see* 8 U.S.C.
§§ 1151(b)(2)(A)(i), 1255(i); 8 C.F.R. § 245.2; *Nunez-Moron v.
Holder*, 702 F.3d 353, 354 n.1 (7th Cir. 2013) (as amended on
denial of rehearing) (explaining that an approved I-130 peti-
tion allows a person illegally present in the United States to
remain and apply for adjustment of status); *In re Hashmi*, 24
I. & N. Dec. 785, 789–90 (BIA 2009). In late 2011 immigration
officers interviewed the couple and detained Souley based
on the outstanding August 2008 removal order.

While detained, Souley moved the immigration court
in Philadelphia to reopen the 2008 proceedings so that he
could adjust his status in the event that DHS granted

Thornton's pending I-130 petition. *See* 8 U.S.C. § 1255(i). He also moved to change venue from Philadelphia to Chicago. The government did not oppose either motion, and the IJ granted the motion to reopen and the motion to change venue in January 2012.

Ten days later DHS issued a Notice of Intent to Deny Thornton's I-130 petition[1] because she had not shown by clear and convincing evidence that the marriage was bona fide and entered into in good faith. *See* 8 U.S.C. §§ 1154(g), 1255(e)(2), (3). DHS pointed to inconsistent responses given by Souley and Thornton about details of their engagement and marriage ceremony, as well as Souley's apparent asthmatic condition. Further, Thornton provided very little documentary evidence regarding the relationship, supplying only a joint bank account statement and a lease agreement that listed her as the only tenant but bore Souley's signature. DHS also noted that eviction proceedings had been brought by Thornton's landlord against her, yet did not name Souley as a party. Finally DHS explained that Souley had not provided proper documentation showing that a previous marriage of his in Niger had ended.

Thornton, aided by Souley's lawyer, responded to the Notice of Intent to Deny, attempting to address DHS's concerns. She attributed the inconsistent statements to misunderstandings about the questions because the interview was conducted through an interpreter. She also stated that she

---

[1] A Notice of Intent to Deny explains DHS's reasons for the impending denial and gives the petitioner 30 days to submit reasons why the denial should not be made and to provide documentary evidence in support.

was the only tenant listed on the lease because Souley was out of town on business when she signed the documents, and the landlord had assured her that Souley could be added to the lease when he returned. The omission of Souley's name from the lease agreement was also the reason he had not been named as a party to the eviction proceedings. Finally, she insisted that Souley's documentation about his divorce in Niger was valid.

In February 2012, while the I-130 petition was pending, Souley posted bond and was released from DHS custody.

Seven months later, DHS denied Thornton's I-130 petition. DHS explained that Thornton's response had not resolved the issues identified in the notice and concluded that Thornton had failed to meet her burden to show that the marriage was bona fide. Thornton did not appeal the denial.

In July 2013, nearly 10 months after the denial of the I-130 petition, Souley, accompanied by counsel, appeared before the IJ at a master calendar hearing. At the hearing Souley admitted the allegations in the Notice to Appear and conceded his removability, but sought a continuance to allow Thornton time to file a second I-130 petition. Souley attached a copy of the prepared I-130 application, a money order showing that Thornton had the funds to pay the filing fee, and documents that he said established the marriage was bona fide, including a lease agreement (Souley is the only resident listed), records from a lawsuit filed against Souley for nonpayment of rent, and joint bank account statements.

The IJ denied the continuance. The IJ analyzed the criteria set forth in *In re Hashmi*, 24 I. & N. Dec. at 790–94, and concluded that Souley had not shown good cause for a continuance. First, the IJ noted that the government opposed the request. Second, as to whether the underlying visa petition was prima facie approvable, the IJ explained that the agency "has clearly stated that it will not grant a visa petition to the respondent through his marriage to Rochelle Thornton." The IJ went on to explain that without an approvable visa petition, Souley was not statutorily eligible for adjustment of status. Finally, the IJ speculated that the primary reason Souley asked for the continuance was to "prolong the hearing unnecessarily." The IJ noted that Thornton's petition was denied nearly a year earlier and she had failed to appeal that decision or introduce any new evidence to support the existence of a valid marriage. Continuing the case so that Souley would have an opportunity "to file a second visa petition by the same petitioner for the same reason is to . . . engage in a futility for no other purpose than delay." Continuances typically should be granted in cases where a visa petition is pending, the IJ observed, but no visa petition was pending in Souley's case because Thornton never filed a second petition.

The Board upheld the IJ's ruling, agreeing with the IJ that no new visa petition had been approved or even filed with DHS and thus Souley had not shown good cause for a continuance or that the continuance resulted in actual prejudice.

Souley contends that the IJ abused his discretion by denying a continuance in a case like his in which a facially approvable visa petition is pending. "[D]iscretion should be

favorably exercised," he urges, "where a *prima facie* approvable visa petition . . . ha[s] been submitted in the course of an ongoing removal hearing." Souley's reliance on this standard is misplaced, however, because Thornton did not file the second I-130 petition before Souley moved to continue the hearing. *See Mohammed v. Holder*, 459 F. App'x 467, 468 (5th Cir. 2012). Thornton apparently has yet to file a second I-130 petition. It is not an abuse of discretion for an IJ to deny a continuance based on the speculative nature of an unfiled I-130 petition. *See Calma v. Holder*, 663 F.3d 868, 878–79 (7th Cir. 2011) (no abuse of discretion where IJ cited the "speculative nature" of alien's hope that noncitizen wife would become naturalized and then file and obtain alien-relative visa leading to his adjustment of status).

Next, Souley argues that the IJ wrongly relied on the denial of Thornton's first I-130 petition as a basis to conclude that good cause did not exist to grant the continuance. But the denial of a prior request for relief is highly relevant to whether good cause exists to continue removal proceedings to await adjudication of a renewed visa petition. *See* 8 C.F.R. § 1003.29; *Morgan v. Gonzales*, 445 F.3d 549, 552–53 (2d Cir. 2006) (no abuse of discretion for IJ to deny continuance for pending adjudication of second I-130 petition based on marriage already determined not to be bona fide); *In re Hashmi*, 24 I. & N. Dec. at 792 (previously rejected I-130 visa petitions may be considered by immigration judges because "prior filings or other evidence of potential fraud or dilatory tactics may impact the viability of the visa petition underlying the motion" for continuance). When an IJ considers a request for a continuance, he may focus on the likelihood that the beneficiary of an I-130 petition will succeed in adjusting his status

based on that petition. *In re Hashmi*, 24 I. & N. Dec. at 790; *see Afzal v. Holder*, 559 F.3d 677, 679 (7th Cir. 2009) (IJ, in ruling on motion for continuance, "was entitled to rely" on fact that alien "could not point to any prospect of success" in getting immigration officials to reinstate previously revoked I-130 petition); *Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir. 2006) (no abuse of discretion to deny continuance given "ultimate hopelessness" of application for adjustment of status); *Morgan*, 445 F.3d at 552 (alien "had no right to the adjudication of a second I-130 petition stemming from a marriage that had already been determined to lack *bona fides*").

Souley's final argument seems grounded in due process, though he does not use the term. He argues that the IJ caught him off guard and acted prematurely by denying the continuance and ordering him removed at the master calendar hearing without allowing him to submit evidence of eligibility at a later hearing date. In order to establish a denial of the right to due process, however, Souley must show that he was prejudiced by the IJ's actions. *See Hasanaj v. Ashcroft*, 385 F.3d 780, 785 (7th Cir. 2004); *Wigglesworth v. INS*, 319 F.3d 951, 960 (7th Cir. 2003). And the record reveals nothing to suggest that he was prejudiced by the IJ's denial of the continuance at the master calendar hearing. The IJ explained that further delay in the case was unnecessary: Souley had over a year and a half to gather additional documents to support a second I-130 petition, yet he failed to do so—indeed, some of the supporting documentation (joint bank account statements) for the second petition appears to be identical to the evidence submitted in support of the failed first petition, and the remainder of the new documentation (lease agreement signed only by Souley and records of a

lawsuit against Souley for nonpayment of rent) does not show that the couple had a bona fide marriage. (Souley's contention that his detention inhibited his discovery efforts is weak; he was released from custody in February 2012, 17 months before his master calendar hearing.) Souley never explained—and still has not explained—what documents he would present if the IJ had given him more time. And the IJ reasonably expressed doubt that Thornton would ever file the second I-130 petition, given that she had failed to do so in the intervening stretch of time after the denial of her first petition.

Accordingly, the petition for review is DENIED.