**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 30, 2019[*]
Decided May 31, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-3401

| | |
|---|---|
| OMAR HUSSEIN KHALIL,<br>*Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A097-999-893 |
| WILLIAM P. BARR,<br>Attorney General of the United States,<br>*Respondent*. | |

**O R D E R**

Omar Hussein Khalil, a citizen of Jordan, petitions for review of a decision of the Board of Immigration Appeals upholding the denial of a continuance and ordering him removed from the country. Khalil argues that he was entitled to a continuance of his removal proceedings to seek counsel and pursue an adjustment of status based on his

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

marriage to a United States citizen. The Board's decision is sound, so we deny the petition.

Khalil entered the United States on a non-immigrant visa in 1991 and seven years later married an Israeli woman, who became a U.S. citizen in 2002. In 2007 or 2008, the couple left for Jordan to care for Khalil's father.

They returned to the United States in 2013, Khalil re-entering illegally. Three months later, he was arrested for retail theft, 720 ILCS 5/16-25(a)(1), and he was sentenced to 30 days' probation. The Department of Homeland Security soon charged him with removability as an alien present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

Several months later, Khalil's wife filed an I-130 petition for an alien relative on his behalf with U.S. Citizenship and Immigration Services. USCIS approved the petition in May 2014. (Khalil testified, however, that he did not learn of this approval until nearly four years later, in April 2018.)

These proceedings have been unusually protracted. At his first immigration hearing in November 2014, an Immigration Judge granted Khalil a 16-month continuance to secure counsel. His next hearing, scheduled for March 2016, was later rescheduled for November 2019.

In the meantime, however, in August 2017, the Department took Khalil into custody after he had been convicted of criminal trespass to property, 720 ILCS 5/21-3, and of resisting a peace officer, 720 ILCS 5/31-1(a), and because he had been arrested again for retail theft, 720 ILCS 5/16-25(a)(1). His November 2019 hearing then was moved up to September 2017.

What followed was a string of continuances that the IJ granted Khalil so that he could secure counsel. At three hearings over the next three months, the IJ granted Khalil's requests for a continuance. And at a hearing in November, Khalil told the IJ that his attorney could attend the hearing if it was rescheduled for three days later, so the IJ granted that request too.

Three days later, Khalil appeared without counsel, and the IJ proceeded to conduct a removal hearing. The IJ determined that Khalil was removable and told him that his illegal entry disqualified him from adjusting his status. The IJ scheduled

another hearing in one month for Khalil to show that he was eligible for voluntary departure.

In December 2017, Khalil told the IJ that he was afraid to return to Jordan, and the IJ continued the case for another month so that Khalil could complete applications for asylum, withholding of removal, and relief under the Convention Against Torture. By the time of the next hearing, however, Khalil had not completed the application, so the IJ continued his case until April 2018.

At the April hearing, the ninth, Khalil renewed his request for another continuance, as he had set forth in a pair of faxes addressed to the IJ. In the faxes, he stated that he needed a continuance because he had hired an attorney who was unable to appear on the hearing date and, further, his wife—who intended to testify on his behalf—was unable to appear because of a death of an unspecified individual (later identified to be her mother). The IJ informed Khalil that she did not receive either fax (Khalil, it turns out, missent the two faxes to the Department's fax number rather than the IJ's) and declined to grant the continuance. The IJ pointed out that Khalil already had been given many opportunities to get an attorney, that Khalil's attorney had yet to enter an appearance, and that Khalil had not submitted any information detailing the particular circumstances of his wife's absence or the testimony that she proposed to offer.

After allowing Khalil to testify about his fear of returning to Jordan, the IJ denied all relief. She found his application for asylum untimely because he filed it more than a year after his last arrival in the United States and, even if it were timely, he had not established that he was the victim of past persecution or that his marriage to an Israeli citizen would cause him to be targeted for future persecution if returned to Jordan. The IJ went on to conclude that Khalil could not meet the higher burden of proof for withholding of removal or establish that he would be subject to torture by or with the acquiescence of the Jordanian authorities. Finally, regarding adjustment of status, the IJ determined that even if Khalil had an approved I-130 petition that was filed by his U.S. citizen wife, he was ineligible to adjust his status in the United States and would have to leave the United States and obtain the necessary waivers and approvals abroad.

Khalil appealed to the Board, arguing only that the IJ should have granted him a continuance at the April 2018 hearing or allowed him to remain in the United States while he pursued a status adjustment based on his wife's petition. The Board upheld the IJ's rulings. Citing the attorney's failure to enter an appearance, the Board agreed with the IJ that Khalil had not established good cause for a continuance. The Board also

agreed with the IJ's explanation that Khalil could not try to adjust his status without first returning to Jordan and formally applying at a U.S. embassy for an immigrant visa.

In his petition for review, Khalil repeats his argument that the IJ should have granted his request for a continuance at the April 2018 hearing; he again highlights the unavailability of both his wife and newly hired counsel. But we see no abuse of discretion in the denial of his request. An IJ "may grant a motion for continuance for good cause shown," 8 C.F.R. § 1003.29, and we will reverse only if the decision "was made without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis," *Calma v. Holder*, 663 F.3d 868, 878–79 (7th Cir. 2011). Here, the IJ and the Board appropriately concluded that Khalil, who had been granted at least five continuances to secure counsel over four years (plus other continuances that prolonged his case for another six months), had not shown good cause for another continuance. Although Khalil represented that he now had counsel, no attorney had entered an appearance on his behalf. As for his wife's unavailability, the Board and the IJ both rightly pointed out that Khalil had not submitted any proffer of her proposed testimony. Those are rational reasons for denying Khalil's request.

Khalil also asserts that the Board should have remanded the case to the IJ because the approved I-130 petition would allow him to adjust his status. The Board, however, acted within its discretion to deny this request. Khalil was not admitted or paroled into the country in 2013, so, even with an approved I-130 petition for alien relative, he would need to return to Jordan and secure a visa *there*, and then reenter the country legally. *See* 8 U.S.C. § 1201(a); *see also id.* § 1255(a), (i) (adjustment of status requires that applicant be "admitted or paroled into the United States"); *Afzal v. Holder*, 559 F.3d 677, 678–79 (7th Cir. 2009) ("[B]ecause Azfal was no longer in the country legally, he had no foundation from which to pursue his I-485 application for adjustment of status."). Because he could not adjust his status without returning to Jordan, the Board did not abuse its discretion in denying his request. *See Souley v. Holder*, 779 F.3d 720, 723–24 (7th Cir. 2015) (no abuse of discretion for Board to deny continuance where petitioner could not demonstrate that he would succeed in adjusting status).

Accordingly, we DENY the petition for review.