**21-6043-ag**
*Paucar v. Garland*

In the
United States Court of Appeals
For the Second Circuit

————

AUGUST TERM 2022

ARGUED: JANUARY 20, 2023
DECIDED: JULY 12, 2023
AMENDED: OCTOBER 10, 2023

No. 21-6043-ag

JUAN PABLO PAUCAR,

*Petitioner*,

*v.*

MERRICK B. GARLAND, United States Attorney General,

*Respondent*.

————

Appeal from the Board of Immigration Appeals.

————

Before: WALKER, RAGGI, and LEE, *Circuit Judges*.

————

Petitioner Juan Pablo Paucar petitions for review of a January 22, 2021 Board of Immigration Appeals ("BIA") decision (1) affirming an Immigration Judge's denial of his application for cancellation of removal and (2) denying his motion to remand. The BIA rejected Paucar's ineffective assistance of counsel claim, declined

to remand for consideration of additional hardship relating to his cancellation application, and declined to remand to await adjudication of his U visa application. Paucar argues that the BIA (1) applied an incorrect standard when reviewing his ineffective assistance of counsel claim, (2) overlooked and mischaracterized his new hardship evidence, and (3) failed to follow precedent when denying his request for remand while awaiting the adjudication of his U visa application. We are persuaded by Paucar's arguments. Accordingly, we **GRANT** Paucar's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.

————

LINDSAY NASH, Kathryn O. Greenberg Immigration Justice Clinic, New York, N.Y. (Paige Austin, Make the Road New York, Brooklyn, N.Y., *on the briefs*), *for Petitioner*.

BRENDAN P. HOGAN, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C. (Brian Boynton, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C.; Cindy S. Ferrier, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C., *on the brief*), *for Respondent*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Petitioner Juan Pablo Paucar petitions for review of a January 22, 2021 Board of Immigration Appeals ("BIA") decision (1) affirming an Immigration Judge's ("IJ") denial of his application for cancellation of removal and (2) denying his motion to remand. *See*

*In re Paucar*, No. AXXX XX0 803 (B.I.A. Jan. 22, 2021), *aff'g* No. AXXX XX0 803 (Immigr. Ct. N.Y.C. May 4, 2018). The BIA rejected Paucar's ineffective assistance of counsel claim, declined to remand for consideration of additional hardship relating to his cancellation application, and declined to remand to await adjudication of his U visa application. Paucar argues that the BIA (1) applied an incorrect standard when reviewing his ineffective assistance of counsel claim, (2) overlooked and mischaracterized his new hardship evidence, and (3) failed to follow precedent when denying his request for remand while awaiting the adjudication of his U visa application. We are persuaded by Paucar's arguments. Accordingly, we **GRANT** Paucar's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

### I.  Proceedings Before the IJ

Paucar, a native and citizen of Ecuador, unlawfully entered the United States in 1999, when he was seventeen years old. In 2005, Paucar began a relationship with his now-wife, also a native and citizen of Ecuador. The couple has two daughters, both native-born U.S. citizens.

In 2012, Paucar filed an asylum application, prepared by the Thomas T. Hecht, P.C. law firm ("the Hecht Law Firm"). Later that year, after being placed in removal proceedings, Paucar withdrew his asylum application, conceded his removability, and filed an application for cancellation of removal under 8 U.S.C. § 1229b(b)(1).[1]

---

[1] *See* 8 U.S.C. § 1229b(b)(1) (permitting the cancellation of removal of a non-citizen who (A) has been physically present in the United States for a continuous period of at least ten years, (B) demonstrates good moral character during such period, (C) has not been convicted of certain disqualifying offenses, and

In support of his application for cancellation of removal, Paucar asserted that removal would cause "exceptional and extremely unusual hardship"[2] to his two U.S. citizen daughters, "J.P." and "S.P.," because (1) they would not receive the same education in Ecuador as in the United States; (2) J.P. was being treated for asthma, and her asthma medication would be much more expensive in Ecuador; and (3) it would be difficult for Paucar to support his family in Ecuador. At the time of Paucar's merits hearing, which took place in February 2016, J.P. and S.P. were, respectively, seven and six years old. At that hearing, Paucar's evidence of hardship largely consisted of letters from J.P.'s pediatrician describing her asthmatic condition—with the most recent letter dated more than eight months prior to the hearing—as well as various medical records from 2011 and 2012. Paucar also testified at the hearing, but counsel at the Hecht Law Firm asked Paucar only four brief questions about hardship. Consequently, Paucar did not address how his daughters were doing in school or whether they had any special needs or mental health issues, and he only gave a cursory description of J.P.'s asthma. During cross-examination, Paucar was questioned in greater detail about J.P.'s asthma, but his counsel declined to elicit any clarifying testimony on redirect.

In a May 4, 2018 written decision, the IJ (Poczter, *J.*) denied Paucar's application for cancellation of removal and ordered Paucar removed to Ecuador. While finding that Paucar had demonstrated good character and met the other eligibility requirements for cancellation of removal, the IJ concluded that Paucar had not demonstrated that his removal would result in exceptional and extremely unusual hardship to his daughters. Specifically, the IJ

---

(D) establishes that removal would result in "exceptional and extremely unusual hardship" to qualifying family members).

[2] *Id*. § 1229b(b)(1)(D).

noted Paucar's testimony that he was unsure whether his wife and children would accompany him to Ecuador if he were to be removed, that J.P. and S.P. had each visited Ecuador without any problems, and that, should J.P. and S.P. remain in the United States, their mother and community would continue to support them. With respect to J.P.'s asthma, the IJ noted that J.P.'s 2012 medical records indicated that "she 'almost never' shows symptoms." Cert. Admin. Rec. ("CAR") at 697. And, as to J.P.'s and S.P.'s education, the IJ found that Paucar had not shown that his daughters had any special educational needs.

## II.    Proceedings Before the BIA

On May 17, 2018, Paucar, represented by new counsel, appealed to the BIA. On July 2, 2018, while the appeal was pending, Paucar moved to remand his case to the IJ.[3] In his motion, Paucar alleged ineffective assistance of prior counsel and presented additional evidence of hardship.

As to ineffective assistance of counsel, Paucar submitted a sworn declaration stating that, in 2012, counsel at the Hecht Law Firm misled him to believe that he was eligible to apply for a green card because he had been living in the United States "por los diez años" (for the ten years). *Id.* at 634. Instead of submitting such an application (which would have been denied because Paucar was not in fact eligible to affirmatively apply for a green card), counsel at the Hecht Law Firm filed an asylum application on Paucar's behalf. After Paucar's asylum application was denied as untimely, *see* 8 U.S.C. § 1158(a)(2)(B) (providing that asylum application must be filed

---

[3] Paucar's motion was titled "Motion to Reopen Removal Proceedings." CAR at 594. However, at the time his motion was filed, Paucar's appeal from the IJ's decision was still pending, and there was thus no final administrative decision. Accordingly, we, like the BIA, treat Paucar's motion as a motion to remand. *See id.* at 4.

"within 1 year" of alien's arrival in the United States), Paucar was placed in removal proceedings, and counsel sought cancellation of removal. Of significance, over the next 3.5 years, counsel at the Hecht Law Firm, who met with Paucar on only two occasions for a total of less than one hour, did not explain to Paucar what cancellation of removal is, that it requires a showing of hardship, and what types of hardship would qualify. According to Paucar, "[a]ll he said was that my case would be granted and that it was a positive factor that my daughter [J.P.] has asthma." CAR at 636. Paucar claims that counsel at the Hecht Law Firm did not tell him he would be testifying at his merits hearing, prepare him for such testimony, or conduct any meaningful investigation into his case. Paucar was thus surprised about the questions asked during his hearing and "didn't really understand what was happening." *Id.* at 637. When Paucar's application for cancellation of removal was denied, counsel at the Hecht Law Firm told him to find another attorney to file an appeal.

Paucar consulted another attorney and ultimately reported the Hecht Law Firm to the New York City Department of Consumer Affairs. Paucar met with an assistant district attorney for Manhattan and filed bar complaints against the firm with the attorney grievance committee of the New York State Supreme Court's First Appellate Division and the U.S. Department of Justice's Executive Office for Immigration Review. Paucar was also one of thirty-three plaintiffs in a civil fraud case filed in the Southern District of New York against attorneys of the Hecht Law Firm; the case was settled in April 2020. *See Guzman v. Hecht*, No. 18 Civ. 3947 (S.D.N.Y. Apr. 2, 2020), Dkt. No. 177.

To establish that his family would suffer hardship if he were removed, Paucar's May 2018 declaration to the BIA described J.P.'s asthma in greater detail, noting that she takes daily pills, has two inhalers that she uses three times a day, and that she receives an

6

injection from her doctor when experiencing an attack. Paucar stated that J.P.'s medication had changed two months earlier because her condition had not been improving, and that her most recent attack had occurred a month earlier. Paucar also explained that the humidity in Ecuador would negatively affect J.P.'s asthma, but that she had been able to go on short trips to visit her grandparents there because her doctor at home had provided her with the medication she needed.

Paucar also stated that, "since . . . kindergarten," J.P.'s teachers have reported that she is "very shy, sensitive, and withdrawn and has difficulty speaking with others." CAR at 639. J.P. became even more withdrawn upon learning that her father might be leaving the country, and J.P.'s teachers recommended that she see a psychologist. Paucar explained that S.P. also had become withdrawn upon learning that her father might be deported, and that she had been taking "special classes" for the previous three years and during the summers "to help her with pronunciation." *Id.* Paucar also described, among other things, that he lives with and supports his mother-in-law, a lawful permanent resident who suffers from "a memory condition" that worsened after a head injury and diabetes, and that his stepson is a member of a gang in Ecuador, where he is currently incarcerated for armed robbery. *Id.* 639–40.

In a supplemental filing on July 31, 2018, Paucar presented additional evidence of hardship totaling nearly 400 pages. This evidence included: (1) updated medical records stating that J.P. has "[m]oderate persistent asthma with (acute) exacerbation" that is "not well-controlled," and describing J.P.'s medication regimen, including oral steroids and antihistamines and both steroid and albuterol inhalers, *id.* at 210–12; (2) a recent report by a clinical psychologist stating that J.P. has "severe social phobia," J.P.'s "progress in school has been severely affected by the threat of deportation" and her

"constant[] worr[y]" regarding violence in Ecuador if deported, S.P. has a "severe speech impediment" that renders her often "unintelligible" and for which she receives extra services at school, and S.P. meets the criteria for post-traumatic stress disorder due to her prolonged exposure to the trauma of her parents possibly being deported, *id.* at 230–34; (3) documentation describing country conditions in Ecuador, including the risk of violence, lack of mental health services, and climate effects on people with asthma, *id.* at 266–579; (4) medical records for Paucar's mother-in-law, *id.* at 254–55; and (5) proof of Paucar's cooperation with government authorities in investigating the Hecht Law Firm for fraud, as it would relate to his U visa application, *id.* at 257–61.

In a January 14, 2020 written decision, the BIA dismissed Paucar's appeal and denied his motion to reopen and remand. Three months later—after Paucar filed a petition to review the BIA's decision in this Court—the BIA *sua sponte* reinstated Paucar's appeal and motion, noting that it had not "consider[ed] all of the evidence submitted by [Paucar]." *Id.* at 124.

Thereafter, in May and July 2020, Paucar submitted supplemental evidence in support of his motion. In the May submission, Paucar included proof that his U visa application had been submitted to U.S. Citizenship and Immigration Services ("USCIS") and was then pending, as well as various articles describing the risk of COVID-19 for asthmatic patients and the extent of the COVID-19 outbreak in Ecuador.

In the July submission, Paucar presented evidence related to J.P.'s then-recent mental health crisis. In a sworn declaration supported by J.P.'s medical records, Paucar explained that then-eleven-year-old J.P. expressed suicidal ideation and tried to harm herself on multiple occasions. At the recommendation of her doctors,

J.P. was hospitalized for over two weeks in June 2020, during which time she was diagnosed with major depressive disorder. Upon discharge, J.P. returned home, where she requires constant monitoring. According to Paucar, J.P. receives medication for her depression, but the specific dosage needs to be monitored by her doctor because of her asthma. Paucar stated that the doctors said that J.P. will likely continue to need medication and therapy "probably [for] at least five years." *Id.* at 29. Paucar also submitted evidence of the lack of mental health services in Ecuador, including specifically for girls and adolescents.

On January 22, 2021, a divided panel of the BIA dismissed Paucar's appeal and denied his motion to remand. The BIA did not dispute the fact or extent of Paucar's prior counsel's ineffectiveness, but concluded that Paucar was not prejudiced by it. The BIA noted that the IJ had already considered many of the hardship issues raised by Paucar on appeal, including J.P.'s asthma, decreased educational opportunities for J.P. and S.P., and poor economic conditions in Ecuador. The BIA acknowledged the additional evidence Paucar submitted regarding his mother-in-law's health, his stepson's criminal history, and S.P.'s need for special education and language classes, but determined that such evidence did not establish hardship. The BIA considered evidence of J.P.'s hospitalization for depression, but rejected it as insufficient because Paucar did not "submit[] objective evidence reflecting that [J.P.] received additional treatment after discharge or continues to require additional treatment" and J.P.'s medical records did not describe "the facts or issues" leading to her hospitalization. *Id.* at 6. The BIA also found that Paucar had not shown that adequate medical care is not reasonably available in Ecuador to treat J.P.'s conditions. Finally, the BIA concluded that remand to await the adjudication of Paucar's U visa petition was

unnecessary because Paucar could request a stay of removal from USCIS.

Paucar timely petitioned for review of the BIA's decision.

## DISCUSSION

Paucar advances three arguments on appeal: (1) the BIA applied an incorrect standard when reviewing his ineffective assistance of counsel claim or, alternatively, the BIA failed to consider the practical impact of prior counsel's conduct; (2) the BIA overlooked and mischaracterized his new hardship evidence or, alternatively, the BIA departed from its prior practice (as demonstrated in unpublished decisions) when reviewing such evidence; and (3) the BIA failed to follow precedent when denying his request for remand to await the outcome of his U visa application.

Our jurisdiction to review the denial of cancellation of removal, including the hardship determination and a denial of remand for further review of a hardship determination, is limited to colorable constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(B), (D); *Sepulveda v. Gonzales*, 407 F.3d 59, 64 (2d Cir. 2005). "We are obliged to dismiss any claim that essentially disputes the correctness of the agency's factfinding or the wisdom of its exercise of discretion." *Hernandez v. Garland*, 66 F.4th 94, 101 (2d Cir. 2023) (alterations and internal quotation marks omitted). We have jurisdiction to review Paucar's ineffective assistance of counsel claim, to address whether the BIA applied the correct legal standards, and to remand if the BIA seriously mischaracterized evidence. *See Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008) (per curiam) ("A claim of ineffective assistance of counsel is a constitutional claim."); *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39 (2d Cir. 2007) (holding that a "constitutional claim" or "question of law" may "arise . . . in fact-

10

finding which is flawed by an error of law" or "where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard" (internal quotation marks omitted)); *Doe v. Sessions*, 886 F.3d 203, 211 (2d Cir. 2018) (holding that "the agency may commit an error of law if important facts have been totally overlooked and others have been seriously mischaracterized" (internal quotation marks omitted)).

We review constitutional claims and questions of law *de novo*. *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009). We otherwise review the BIA's decision—including its denial of Paucar's motion for remand to consider new evidence or to await the adjudication of his U visa application—for abuse of discretion. *See Sanusi v. Gonzales*, 445 F.3d 193, 198 (2d Cir. 2006) (per curiam); *Li Yong Cao v. U.S. Dep't of Just.*, 421 F.3d 149, 157 (2d Cir. 2005). The BIA abuses its discretion when its decision rests on an error of law, inexplicably departs from established policies, or is so devoid of any reasoning as to raise the concern that it acted in an arbitrary or capricious manner. *Ke Zhen Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 93 (2d Cir. 2001); *Freire v. Holder*, 647 F.3d 67, 69 (2d Cir. 2011) (per curiam).

## I.  Ineffective Assistance of Counsel

Paucar contends that the BIA erred by applying a heightened legal standard in evaluating whether he was prejudiced by his prior counsel's conduct or, alternatively, by failing to adequately consider the impact of counsel's ineffectiveness. We agree that the BIA erred in its prejudice analysis.

To demonstrate ineffective assistance of counsel, Paucar must show that counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced as a result of such

11

deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Rabiu v. I.N.S.*, 41 F.3d 879, 882 (2d Cir. 1994) (movant must show "that competent counsel would have acted otherwise" and "that [the movant] was prejudiced by his counsel's performance" (quoting *Esposito v. I.N.S.*, 987 F.2d 108, 111 (2d Cir. 1993) (per curiam))).  Here, the parties do not dispute that prior counsel's performance was deficient; the sole issue, therefore, is whether Paucar was prejudiced by prior counsel's deficient performance.  To establish prejudice in this context, Paucar must show that, "but for counsel's unprofessional errors," there is a "reasonable probability" the IJ would have granted the relief Paucar requested.  *Matter of Melgar*, 28 I. & N. Dec. 169, 171 (B.I.A. 2020).  Such a probability is demonstrated where a movant makes "a *prima facie* showing that, but for counsel's ineffectiveness, 'he would have been eligible for . . . relief,' and 'could have made a strong showing in support of his application.'"  *Scarlett v. Barr*, 957 F.3d 316, 326 (2d Cir. 2020) (quoting *Rabiu*, 41 F.3d at 882).  While this prejudice standard is factually demanding, it requires a "reasonably probable," not a "likely," grant of relief.

We agree with Paucar that the BIA improperly imposed a heightened standard when evaluating whether Paucar was prejudiced by prior counsel's deficient performance.  On at least two occasions in its decision, while discussing prejudice and hardship, the BIA cited *Matter of Coelho*, a case in which the BIA imposed a "heavy burden" on a party moving to reopen or remand based on newly available evidence.  20 I. & N. Dec. 464, 473 (B.I.A. 1992) (concluding that "a prima facie showing of eligibility for the underlying relief being sought is largely irrelevant" and that "the Board ordinarily will not consider a discretionary grant of a motion to remand unless the moving party meets a 'heavy burden' and presents evidence of such

12

a nature that the Board is satisfied that . . . the new evidence offered would *likely* change the result in the case" (emphasis added)).

The government argues that the BIA cited *Coelho* not to assess prejudice from prior counsel's ineffective representation but only to support the BIA's other finding that Paucar's newly available evidence in support of his motion to remand did not demonstrate hardship. This argument is unpersuasive for two reasons: First, at no point did the BIA cite the correct "reasonable probability" standard for evaluating prejudice. Indeed, the only standard discussed in analyzing prejudice was the "heavy burden" *Coelho* standard. And, second, the BIA's prejudice analysis itself suggests that it applied a more onerous standard than required. *See Alom v. Whitaker*, 910 F.3d 708, 713–14 (2d Cir. 2018) (per curiam) (reversing BIA decision where BIA "failed to acknowledge the [correct] standard . . . . [and its] commentary implie[d] that it applied [an incorrect standard]"); *see also Manzur v. U.S. Dep't of Homeland Sec.*, 494 F.3d 281, 289–90 (2d Cir. 2007) (remanding where BIA analysis was "insufficient to determine whether the correct legal standard was applied").

For example, in discussing new evidence regarding the special education and language classes S.P. received for her speech impediment—evidence that Paucar attested would have been available to counsel at the Hecht Law Firm—the BIA noted that Paucar did not "*clearly explain* . . . the extent of the concerns regarding [these needs]." CAR at 6 (emphasis added). To establish prejudice, however, Paucar need not conclusively establish his entitlement to relief; he need only make a sufficiently strong showing to establish that there is a "reasonable probability" of such entitlement to relief. *Melgar*, 28 I. & N. Dec. at 171; *see also Scarlett*, 957 F.3d at 326. And, here, the BIA appears to have overlooked the clinical psychologist's report showing that S.P. "has a severe speech impediment and was difficult to understand, often unintelligible" and that, if she "were to

lose access to the speech services she receives, particularly at her age, it could permanently undermine her speech development." CAR at 232. The BIA also separately overlooked the clinical psychologist's remarks regarding J.P.'s "severe social phobia," *id.* at 231, evidence of which apparently would have been available to the Hecht Law Firm at the 2016 merits hearing, *see id.* at 639 (Paucar declaration stating that, "since . . . kindergarten," J.P. had been "very shy, sensitive, and withdrawn and has difficulty speaking with others"). The BIA thus erred by applying a heightened standard to, and thereby not adequately considering, the evidence Paucar presented to establish that he was prejudiced by prior counsel's ineffectiveness.[4]

We also briefly address Paucar's alternative argument: that the BIA did not adequately consider the impact of counsel's ineffectiveness when it relied on the IJ's tainted findings in evaluating prejudice. Specifically, Paucar claims that the BIA disregarded Paucar's new hardship evidence—some of which would have been available to prior counsel, had counsel requested it—because, in its view, the IJ had already "considered many of the hardship issues

---

[4] The government defends the BIA's decision not to "afford significant weight" to the psychologist's report, noting, *inter alia*, that (1) the report did not address whether S.P. was enrolled in special education and speech therapy classes at the time the Hecht Law Firm represented Paucar, and (2) the author of the report did not claim to be a trained speech therapist. We note, however, that in Paucar's July 2018 sworn declaration, he stated that "[S.P.] has had to take special classes the *last three or so school years* and summers to help her with pronunciation." CAR at 639 (emphasis added). There was thus evidence that S.P. was being treated for her speech impediment when the Hecht Law Firm was representing Paucar at the merits hearing in February 2016. Moreover, to the extent that the government asks us to affirm the BIA's decision based on reasons not provided by the BIA, we decline to do so. *See Wu v. I.N.S.*, 436 F.3d 157, 164 (2d Cir. 2006) ("It is not the function of a reviewing court in an immigration case to scour the record to find reasons why a BIA decision should be affirmed. Rather, we take the Board's decision as we find it, and if the reasoning it advances for denying a petitioner's claim cannot support the result, we will vacate the decision.").

raised . . . on appeal." *Id.* at 5. We agree that the BIA erred by discounting the impact of counsel's ineffectiveness.

In considering J.P.'s asthma, for example, the IJ noted that J.P.'s then-most recent medical records indicated that she had last experienced an asthma flare over three years earlier and that J.P. had been able to travel to visit her grandparents in Ecuador on three occasions. On appeal, however, Paucar explained that his prior counsel had not produced the most recent medical records, which indicated that J.P.'s asthma had worsened, and had not adequately developed the record with respect to the long-term effects of living with asthma in Ecuador. Because Paucar's ineffective assistance of counsel claim was based on such failures to develop the record, it was error for the BIA to reject this claim simply because some of the hardship issues raised on appeal had previously been considered in some form by the IJ.[5]

In sum, we conclude that the BIA erred by applying a heightened standard and by relying on the IJ's tainted findings when considering whether Paucar was prejudiced by prior counsel's deficient performance. On remand, the BIA should differentiate

---

[5] With respect to the long-term effects of J.P.'s asthma in Ecuador, the government argues that Paucar has not indicated on appeal whether J.P. would accompany him to Ecuador. As Paucar explained at oral argument, however, there is a presumption that his daughters would accompany him to Ecuador, given that his wife is also in removal proceedings. *Cf. Matter of Calderon-Hernandez*, 25 I. & N. Dec. 885, 886 (B.I.A. 2012) (explaining that "where the parents intend for their United States citizen child to remain in this country upon their deportation, they must provide both an affidavit stating that intention and accompanying evidence to demonstrate who could care for and support the child"; but "[w]here both parents are living in the United States and the parent who is in proceedings indicates an intention that a child will remain in the United States upon his or her removal, an affidavit and other documentary evidence regarding the care and support of the child is not required"); *accord Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 n.3 (B.I.A. 2020).

between two types of hardship evidence presented by Paucar in his appeal and motion to remand: (1) hardship evidence that was available to prior counsel (and thus could form the basis for Paucar's claim of prejudice), for which Paucar must show that there is a "reasonable probability" of establishing his eligibility for cancellation of removal, *Melgar*, 28 I. & N. Dec. at 171, and (2) evidence that was not previously available to prior counsel, for which Paucar must show that the evidence "would likely change the result in the case," *Coelho*, 20 I. & N. Dec. at 473.

## II.     Evaluation of Paucar's Newly Available Hardship Evidence

Paucar next argues that, apart from his ineffective assistance of counsel claim, the BIA erred by mischaracterizing and overlooking newly available hardship evidence submitted in support of his appeal and motion to remand. He also argues that the BIA arbitrarily departed from its prior practice in evaluating his hardship evidence. *See* Paucar Br. at 47–49 (collecting unpublished decisions in which the BIA granted motions to remand in cancellation cases based on evidence of qualifying family members' depression, suicidal ideation, or other psychological disorders); Paucar Addendum ("Add.") at 8–48 (same); Paucar Reply Add. at 2–4 (same). We agree that the BIA erred in evaluating Paucar's newly available hardship evidence.[6]

In its decision, the BIA concluded that the new evidence of J.P.'s major depressive disorder, suicidal ideation, and self-harm was not likely to change the outcome of Paucar's cancellation of removal application because J.P.'s hospital records "do not reference or describe the facts or issues underlying the mental health concerns that

---

[6] As noted *supra*, we also conclude that the BIA mischaracterized or overlooked evidence regarding S.P.'s speech impediment and special educational needs, as well as J.P.'s early psychological symptoms—evidence that Paucar claimed would have been available to prior counsel.

led to her hospitalization" and Paucar did not submit "objective evidence" that J.P. had received "additional treatment after discharge or continues to require additional treatment." CAR at 6.

The BIA, in reaching these conclusions, overlooked and mischaracterized the record evidence of J.P.'s serious mental illness. J.P.'s discharge papers stated that she had been diagnosed with "severe" "[m]ajor depressive disorder," and that the reason for her hospitalization was "[s]tabilization of suicidal ideation." *Id.* at 33. Such diagnosis was consistent with the observations made by a clinical psychologist two years earlier regarding J.P.'s "withdrawal" from others and her "developmentally inappropriate excessive anxiety," which the psychologist diagnosed as "severe Separation Anxiety Disorder and Social Phobia." *Id.* at 231–34. Additionally, in his sworn declaration, Paucar attested that, in the days leading up to J.P.'s hospitalization, he and his wife "learned that [J.P.] tried to hurt herself twice and that she had fallen behind in school." *Id.* at 27. Paucar stated that J.P. "revealed this to us after we learned she had been deleting emails from her school." *Id.* In its decision, the BIA provided no explanation for why the hospital records, particularly in conjunction with the psychological report and Paucar's sworn declaration, were insufficient to confirm J.P.'s diagnosis.

For similar reasons, the BIA erred by overlooking or mischaracterizing evidence regarding J.P.'s treatment. J.P.'s discharge paperwork listed follow-up details for a mental health clinic, as well as prescriptions for a daily anti-depressant. While the discharge instructions do not state the time and date of J.P.'s follow-up appointments (which were to take place at a separate mental health facility near Paucar's home), or the duration of her treatment, Paucar asserted that J.P. had been participating in weekly therapy sessions and that J.P.'s doctors expected that she would likely need to continue medication and therapy for at least five years. In the absence

of an adverse credibility finding as to Paucar—or some other reason to place less weight on Paucar's sworn declaration or the evidence as a whole—the BIA has not explained why it is reasonable to expect Paucar to provide additional "objective evidence" regarding J.P.'s treatment. *See Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009) (per curiam) ("The IJ did not make an adverse credibility determination, and we are not confident that, after taking the overlooked evidence into account and describing it accurately, the agency would come to the conclusion that Petitioner has not met the standard of 'exceptional and extremely unusual hardship.'"); *cf. Alvarado-Carillo v. I.N.S.*, 251 F.3d 44, 54 (2d Cir. 2001) (BIA erred in affirming denial of asylum without explaining "why it would have been 'reasonable to expect the provision of [additional corroborating] materials under its own standards'" (quoting *Diallo v. I.N.S.*, 232 F.3d 279, 289 (2d Cir. 2000))).[7]

Because the BIA overlooked and mischaracterized material evidence, we conclude that the BIA erred in denying Paucar's motion to remand based on insufficient evidence of hardship. *See Doe*, 886 F.3d at 211 ("[T]he agency may commit an error of law if important facts have been totally overlooked and others have been seriously mischaracterized." (internal quotation marks omitted)).

Although it is not necessary to address Paucar's alternative argument—that the BIA arbitrarily departed from prior practice reflected in unpublished decisions—we note briefly that, in this Circuit, unpublished BIA decisions generally do not have precedential value. *See Ajdin v. Bureau of Citizenship & Immigr. Servs.*, 437 F.3d 261, 264–65 (2d Cir. 2006) (per curiam) ("[T]he BIA['s] fail[ure] to adhere to one of its prior unpublished decisions . . . is of

---

[7] Because the BIA overlooked evidence of J.P.'s diagnosis and treatment, its analysis regarding the medical care available in Ecuador to treat J.P. was also flawed.

18

no moment because unpublished opinions of the BIA have no precedential value."); *Douglas v. I.N.S.*, 28 F.3d 241, 245 (2d Cir. 1994) ("[Unpublished BIA] decisions should not be relied upon as binding precedent in unrelated matters."). Some of our sister circuits, however, seem to have taken a different approach. *See, e.g., Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 654 (3d Cir. 2017) ("There is no apparent administrative-law principle that removes unpublished, nonprecedential agency decisions from the reach of review for arbitrariness."); *Davila-Bardales v. I.N.S.*, 27 F.3d 1, 5–6 (1st Cir. 1994) ("[W]e see no earthly reason why the mere fact of nonpublication should permit an agency to take a view of the law in one case that is flatly contrary to the view it set out in earlier (yet contemporary) cases, without explaining why it is doing so."); *see also Vargas v. I.N.S.*, 938 F.2d 358, 362 (2d Cir. 1991) (citing unpublished BIA decisions with similar fact patterns and concluding that "[p]atently inconsistent application of agency standards to similar situations lacks rationality and is arbitrary" (internal quotation marks omitted)).[8] On remand, the BIA can of course examine the evidence presented by Paucar in a manner consistent with its prior decisions.[9]

---

[8] In *Douglas v. I.N.S.*, 28 F.3d 241 (2d Cir. 1994), this court distinguished *Vargas*, noting that the case "did not explicitly consider the issue of the precedential value of unpublished BIA decisions, and its reliance on those decisions is in tension with 8 C.F.R. § 3.1(g)," *id.* at 245.

[9] Paucar requests that we instruct the BIA to remand this matter to the IJ for further fact-finding. While we recognize that Paucar's appeal has been pending for more than five years and that a speedy resolution of this case is desirable, we decline to instruct the BIA to grant Paucar's motion to remand given the discretionary nature of such motions.

### III. Paucar's U Visa Application

As a final matter, Paucar argues that the BIA erred by not applying agency precedent to his request for a remand to await adjudication of his U visa by USCIS.

By way of background, USCIS can issue up to 10,000 so-called "U visas" each fiscal year to individuals without legal status who are victims of a qualifying crime and assist law enforcement in the investigation or prosecution of such a crime. *See* 8 U.S.C. §§ 1101(a)(15)(U)(i), 1184(p)(2)(A). In support of his motion to remand, Paucar submitted (1) a letter from the Manhattan District Attorney's Office stating Paucar's cooperation with an investigation of the practices of prior counsel, (2) bar complaints against prior counsel filed with the grievance committees of the New York State Supreme Court's First Appellate Division and the U.S. Department of Justice's Executive Office for Immigration Review, (3) an application he submitted to the New York City Department of Consumer Affairs seeking a U visa law enforcement certification based on his cooperation, and (4) a filing receipt to establish that he had filed a U visa application with USCIS. In his May 2020 brief to the BIA, Paucar argued that his pending U visa application supported his motion for remand because it would change the outcome of his case and "because it presumptively entitles him to a continuance before the IJ while his visa is adjudicated." CAR at 82 (citing *Matter of Sanchez Sosa*, 25 I. & N. Dec. 807 (B.I.A. 2012)).

In *Matter of Sanchez Sosa*, the BIA established a standard for "determining whether an alien has established good cause to continue a case involving a U nonimmigrant visa petition." 25 I. & N. Dec. at 807. The BIA explained that IJs "have broad discretionary authority over continuances based on the regulations, which state that an 'Immigration Judge may grant a motion for continuance for good

cause shown,'" but there are certain factors an IJ must evaluate to determine "whether good cause exists to continue proceedings to await adjudication by the USCIS." *Id.* at 812 (some internal quotation marks omitted) (quoting 8 C.F.R. § 1003.29). These factors include "(1) the [Department of Homeland Security's ("DHS")] response to the motion; (2) whether the underlying visa petition is prima facie approvable; and (3) the reason for the continuance and other procedural factors." *Id.* at 812–13. "As a general rule, there is a rebuttable presumption that an alien who has filed a prima facie approvable [U visa] application with the USCIS will warrant a favorable exercise of discretion for a continuance for a reasonable period of time." *Id.* at 815.

Here, the BIA concluded that Paucar's pending U visa application did not warrant remand to the IJ. In so concluding, the BIA cited *Sanchez Sosa* for the proposition that "[t]he adjudication of [Paucar's] request for a U visa is within DHS's jurisdiction." CAR at 8. The BIA then noted that Paucar had not established that his U visa application "ha[d] been favorably adjudicated" and that Paucar could request a stay of removal from DHS directly. *Id.*

Paucar argues that the BIA erred by not applying the *Sanchez Sosa* factors—including, primarily, whether Paucar's U visa application was *prima facie* approvable—to determine whether to grant his request for remand. The government argues that the *Sanchez Sosa* factors apply only in "ongoing proceedings pending the adjudication of U-visa applications" or where the noncitizen has previously moved to continue before the IJ, but not, as in the case here, where removal proceedings before the IJ have concluded and

Paucar did not initially request a continuance from the IJ. Government Br. at 49 (emphasis omitted).

It is an open question in this Circuit whether *Sanchez Sosa* applies to motions to remand or reopen filed during the pendency of an appeal where the noncitizen did not previously request such a continuance before the IJ. *See Rodriguez v. Barr*, 943 F.3d 134, 144 (2d Cir. 2019) (concluding that "the Court does not need to reach the question of whether the *Sanchez Sosa* factors would apply" to a motion to reopen filed after removal proceedings had concluded because, after the motion was filed, USCIS denied the petitioner's U visa application). Other courts of appeals have addressed this question, however, and have answered in the affirmative.

In *Caballero-Martinez v. Barr*, 920 F.3d 543 (8th Cir. 2019), the Eighth Circuit concluded that the BIA erred by denying a motion to remand merely because the U visa application and motion for remand had been filed during the pendency of the appeal before the BIA, *id.* at 548–50. The court rejected the government's argument that *Sanchez Sosa* did not apply, noting that the criminal conduct triggering the U visa application occurred after the IJ had issued his order. *Id.* at 550. The court concluded that "the principle stated in *Sanchez-Sosa*— pausing removal proceedings pending the adjudication of a petition potentially rendering removal inapplicable—[should not] operate differently depending on whether the triggering event occurs while the case is before the IJ or before the BIA." *Id.*

The Eighth Circuit applied this rule in at least one subsequent case, noting that "both the IJ and the BIA may grant continuances on the basis of pending U visa petitions even though they do not have jurisdiction over U visa petitions" and that "the BIA . . . ha[s] the authority either to apply the *Sanchez Sosa* factors itself or to remand to the IJ to determine in the first instance whether a continuance [i]s

warranted." *Quecheluno v. Garland*, 9 F.4th 585, 588–89 (8th Cir. 2021) (internal quotation marks omitted). There, as in *Caballero-Martinez*, the petitioners' U visa applications were filed while their appeal before the BIA was pending. *Id.* at 587–88.

The Seventh Circuit reached a similar conclusion in *Guerra Rocha v. Barr*, 951 F.3d 848 (7th Cir. 2020). There, the petitioner filed her U visa application while her case was pending before the IJ, but she was only able to obtain a receipt of her submitted application after the IJ had issued a decision denying her asylum claim and ordering her removal. *Id.* at 850–51. The petitioner then filed proof of her submitted U visa application before the BIA, but the BIA declined to remand to the IJ, summarily concluding that she was not entitled to a continuance and that she could instead seek a stay of removal from DHS. *Id.* at 851. On appeal, the Seventh Circuit held that "the BIA abused its discretion by disregarding the criteria it committed itself to apply in *Sanchez Sosa* . . . when it refused to remand [petitioner's] case to the IJ for consideration of her request for a continuance." *Id.* at 854.

Finally, in *Benitez v. Wilkinson*, 987 F.3d 46 (1st Cir. 2021), the petitioner moved to reopen and remand his case based on USCIS's notification that he was on a waitlist to receive a U visa, *id.* at 51. At the time the petitioner moved to reopen and remand, the BIA had issued a final order of removal. *Id.* at 49–51. The BIA denied his motion to reopen and remand, reasoning that it could only grant the motion if the petitioner had actually been granted the U visa. *Id.* at 51–52. On appeal, the First Circuit held that the BIA abused its discretion by not considering the *Sanchez Sosa* factors, noting the absence of "case law that indicates that post-appeal motions to reopen are subject to a different standard." *Id.* at 55. The court also noted that "the Board has applied the same *Sanchez Sosa* standard to post-appeal motions to reopen in its unpublished decisions." *Id.* (first citing *In re Ramirez-Rios*, No. AXXX XX8 419, 2016 WL 1084499, at *1

(B.I.A. Feb. 29, 2016); and then citing *In re Rosales De La Cruz*, No. AXXX XX6 933, 2016 WL 946691, at *1 (B.I.A. Feb. 18, 2016)). The court concluded that, in considering motions to reopen, "the Board must follow the *Sanchez Sosa* framework, or explain its reasons for applying a different standard." *Id.* at 53.

We are persuaded by the reasoning of our sister circuits. As these courts have held, it does not matter whether Paucar initially requested a continuance from the IJ or whether his motion to remand was filed while proceedings before the IJ were ongoing. Indeed, Paucar only became aware of prior counsel's alleged misconduct—the premise for his U visa application—after the IJ had issued its decision and Paucar sought advice from other counsel. Thereafter, he appears to have diligently pursued his U visa application and presented proof of his submitted U visa application to the BIA while his appeal was still pending. The BIA has advanced no reason why *Sanchez Sosa* should not apply under these circumstances. Because the BIA is required to follow its own precedent, *see Ke Zhen Zhao*, 265 F.3d at 93, we conclude that the BIA should have applied the *Sanchez Sosa* factors in considering Paucar's motion to remand as it pertains to his U visa or explained its reasoning for not doing so.[10]

## CONCLUSION

For the foregoing reasons, we **GRANT** Paucar's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.

---

[10] We reject the government's remaining arguments regarding the purported futility of Paucar's request for a remand to await the adjudication of his U visa application. We believe that the BIA or the IJ are in the best position to determine whether Paucar has demonstrated his *prima facie* eligibility for a U visa.