Bhandari v. Blanche

BIA
Poczter, IJ
A206 302 600

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of June, two thousand twenty-six.

PRESENT:
> **PIERRE N. LEVAL,**
> **MICHAEL H. PARK,**
> **EUNICE C. LEE,**
> > *Circuit Judges.*

---

**Bimala Sharma Bhandari,**

> *Petitioner,*

> v.        **25-2210**

**Todd Blanche, Acting United States Attorney General,**

> *Respondent.*

---

FOR PETITIONER:                          Eric Hisey, Brooklyn, NY.

FOR RESPONDENT:                       Christopher B. Buchanan, Trial Attorney, Office of Immigration Litigation; John S. Hogan, Assistant Director, Office of Immigration Litigation; Brett A. Shumate, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Bimala Sharma Bhandari, a native and citizen of Nepal, seeks review of an August 15, 2025, decision of the BIA that (1) affirmed an August 12, 2019, decision of an Immigration Judge ("IJ") denying Bhandari's application for cancellation of removal and (2) denied her motion to remand for consideration of new evidence. *In re Bimala Sharma Bhandari*, No. A 206 302 600 (B.I.A. Aug. 15, 2025), *aff'g* No. A 206 302 600 (Immigr. Ct. N.Y.C. Aug. 12, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

## I.     Cancellation of Removal

We have reviewed both the IJ's and BIA's decisions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). To be eligible for cancellation of removal,

an alien must establish that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D); *see Wilkinson v. Garland*, 601 U.S. 209, 211–12 (2024); *Garcia Carrera v. Garland*, 117 F.4th 9, 12 (2d Cir. 2024). The hardship "must be substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." *Garcia Carrera*, 117 F.4th at 12 (quotation marks omitted). Relevant factors include "the age[], health, and circumstances" of the qualifying relative. *Id.* (quotation marks omitted). A "strong applicant might," for instance, "have a qualifying child with very serious health issues, or compelling special needs in school." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (B.I.A. 2001).

Our jurisdiction to review the denial of cancellation of removal is limited to "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(B)(i), (D). A question of law may arise where the agency applied the wrong legal standard, *see Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2008), or "totally overlooked" or "seriously mischaracterized" important facts, *Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009). We have jurisdiction to review whether established facts meet the "exceptional and extremely unusual hardship" standard. *Wilkinson*, 601 U.S. at 221–22. But we lack

3

jurisdiction to review the underlying factual determinations like "the seriousness of a family member's medical condition," *id.* at 225, "the agency's weighing of the evidence," "the logic it employed in drawing inferences from" the evidence, or "the factual findings that result from such analysis," *Penaranda Arevalo v. Bondi*, 130 F.4th 325, 340 (2d Cir. 2025). We review pure questions of law *de novo*, *Paucar v. Garland*, 84 F.4th 71, 80 (2d Cir. 2023), and the hardship determination for clear error, *Toalombo Yanez v. Bondi*, 140 F.4th 35, 45 (2d Cir. 2025).

Bhandari asserted that her son would accompany her to Nepal, and the basis for hardship was his Attention-Deficit/Hyperactivity Disorder ("ADHD"). Bhandari thus had to show that this was a serious condition for which "adequate medical care" would not be "reasonably available" in Nepal. *Matter of J–J–G–*, 27 I. & N. Dec. 808, 811 (B.I.A. 2020). In denying her application for cancellation of removal, the agency found that: Bhandari's son's ADHD is managed without medication; he has monthly therapy sessions and quarterly neurology follow ups; he is excelling academically and requires no accommodations in school other than extra classes to occupy him; he has no behavioral issues in school; his "ADHD appears to mostly require that the child be kept busy which could be done in Nepal as well"; and both Bhandari and her husband are educated and could conceivably find work to support the family in Nepal. Certified Administrative

4

Record ("CAR") at 179–80. The IJ also determined that ADHD appears to be "known" and "of concern to practitioners" in Nepal, based on an "ADHD study undertaken in a hospital in Nepal" that found "a high prevalence of ADHD in teenagers in that country." *Id.* at 180. The IJ acknowledged that the family might have "a lower standard of living" in Nepal but stated that "such a lowered standard . . . is not sufficient to establish exceptional and extremely unusual hardship." *Id.* Our review is limited to whether, on the record before it, the agency clearly erred in concluding that Bhandari did not establish that her son would experience "exceptional and extremely unusual" hardship in Nepal. *See* 8 U.S.C. § 1229a(c)(4)(A)(i) (placing burden on applicant).

We discern no clear error. "A lower standard of living or adverse country conditions in the country of return . . . generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." *In re Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64. And the agency essentially determined that Bhandari's son's presentation of ADHD was not so severe as to be impacted by the mother's removal to Nepal. On the record before the IJ—in particular, the evidence that Bhandari's son's ADHD is manageable without medication, he is thriving in school without accommodations, he has not exhibited behavioral issues in school, and his ADHD mostly requires that he be kept busy—the agency did not clearly err in concluding

5

that Bhandari failed to establish that her removal would result in exceptional and extremely unusual hardship. *See id.* at 63.

We find no merit to Bhandari's contention that the BIA engaged in impermissible factfinding when it determined that she had not shown that care for her son's ADHD was not reasonably available in Nepal. "Whether a qualifying relative suffers from a serious medical condition and whether adequate medical care for this condition is reasonably available in the country of removal are findings of fact that are made by an [IJ] and reviewed on appeal" by the BIA. *Matter of J–J–G–*, 27 I. & N. Dec. at 811. The BIA cannot "engage in *de novo* review of findings of fact determined by" an IJ, nor can it engage in factfinding itself; instead, it reviews the IJ's findings for clear error. 8 C.F.R. § 1003.1(d)(3). Here, the BIA acknowledged that the evidence before the IJ showed limited mental health services in Nepal but reasoned that the record did not show that Bhandari's son would be unable to receive adequate care in Nepal. This is not impermissible factfinding because it reflects the facts as found by the IJ and an application of the hardship standard to those facts to determine whether the applicant met her burden of proof. Moreover, the IJ stated that, based on the evidence, "it appears that ADHD is known and is of concern to practitioners" in Nepal, CAR at 180, implying the availability of some treatment or at least rejecting a conclusion that care was entirely

6

unavailable. Thus, the BIA and IJ reached the same conclusion in different words—that Bhandari had not shown that any required treatment would be unavailable or inadequate. Further, because the BIA acknowledged the evidence of limited treatment, there is no indication that it "totally overlooked" or "seriously mischaracterized" evidence. *Mendez*, 566 F.3d at 323.

## II. Motion To Remand

On appeal to the BIA, Bhandari also sought remand to present additional hardship evidence. "A motion to remand that relies on newly available evidence is held to the substantive requirements of a motion to reopen." *Li Yong Cao v. U.S. Dep't of Just.*, 421 F.3d 149, 156 (2d Cir. 2005). Accordingly, it "shall not be granted unless it appears . . . that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Where, as here, the additional evidence is in support of a form of relief already considered, the movant has "a heavy burden" to show that "the new evidence offered would likely change the result in the case." *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (B.I.A. 1992) (quotation marks omitted); *see Paucar*, 84 F.4th at 83.

We review the BIA's denial of a motion to reopen for abuse of discretion. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008). And where, as here, a movant

7

requests remand for consideration of cancellation of removal, our review is limited to constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D); *Sepulveda v. Gonzales*, 407 F.3d 59, 64 (2d Cir. 2005).

Bhandari's new evidence reflected the following changes since the IJ's 2019 decision: (1) her son began ADHD medication in August 2019, which was confirmed by a letter from his prescriber who opined that the medication was "not likely" available "overseas," CAR at 79; and (2) her son and the family had started new individual and family therapy in January 2021, which, combined with the medication, resulted in improved test scores. She also provided a report about child and adolescent health issues in Nepal that indicated there was only one child psychiatrist in Nepal and only one outpatient clinic for children, as well as articles about the general importance of parental involvement in implementing routine and structure for youth with ADHD.

The BIA found that Bhandari's son's doctor opined that such medication was "not likely" available overseas but did not specify that it was unavailable in Nepal. *Id.* at 5. And it found that the report about mental health issues and ADHD in Nepal did not establish that Bhandari would be unable to access treatment for her son. Finally, it found that the evidence of therapy and parental involvement was not new, as Bhandari had testified before the IJ that her son was in therapy and that a component of the therapy

8

was parental involvement. On this record, the BIA did not abuse its discretion in concluding that the evidence would not change the outcome. *See Matter of Coelho*, 20 I. & N. Dec. at 473; *cf. Matter of J–J–G–*, 27 I. & N. Dec. at 811 (holding that, where a claim is based on a qualifying child's health and the child will accompany the applicant to the country of removal, the applicant must show that adequate medical care for a serious condition is not reasonably available in that country).

Moreover, the BIA did not mischaracterize Bhandari's evidence, which did not address the availability of ADHD medication in Nepal, nor did it dismiss or ignore her evidence showing just one child and adolescent psychiatrist and one outpatient facility in Nepal. *See Mendez*, 566 F.3d at 323. Rather, the BIA acknowledged the report about ADHD in Nepal but concluded that the evidence had not established that Bhandari's son would be further impacted by such limitations. And the BIA reasonably concluded that the evidence of her son's therapy and his excellence in school was not new under 8 C.F.R. § 1003.2(c)(1). Before the IJ, Bhandari had testified that she was managing her son's ADHD by implementing structure and extra activities in the home. Her new evidence of parental involvement in behavioral therapy for ADHD similarly requires implementing structure and limitations in the home. And the evidence before the IJ showed that her son was excelling in school, so the evidence of academic achievement

was not new.   In sum, as the evidence submitted in support of remand did not establish that necessary care would be unavailable to Bhandari's son, and as therapy and his success in school was not new information, the BIA did not abuse its discretion in concluding that the evidence would not change the outcome of the hardship determination.   *See Matter of Coelho*, 20 I. & N. Dec. at 473; *see also Paucar*, 84 F.4th at 82–83.

We have considered Bhandari's remaining arguments and find them to be without merit.   Accordingly, we **DENY** the petition for review.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court